LOUISA WINGO *v.* STATE OF MISSISSIPPI.

[45 South., 862.]

CRIMINAL LAW AND PROCEDURE. *Evidence. Manslaughter.*

> In a prosecution for manslaughter, no third person having seen
> the altercation, if the defendant, claiming to have acted in self-
> defense, admit the killing, she cannot complain that the jury
> failed to accept from her an explanation of the homicide which
> is inconsistent with the physical facts.

FROM the circuit court of, first district, Carroll county.

HON. JOSEPH T. DUNN, Judge.

Madame Wingo, appellant, was indicted and tried for and
convicted of manslaughter, the killing of her husband, sentenced
to the penitentiary for three years, and appealed to the supreme
court.

The charge was that appellant killed her husband by hitting
him on the head with an axe. No third person witnessed the
killing. A son of the deceased, however, testified that at the
time of the homicide he was in a room adjacent to that in which
the killing took place, and, while putting on his clothes in
the early morning, heard the axe strike his father, and later
saw him dead, lying across the bed.

The appellant, testifying in her own defense, admitted the
killing, but claimed that she acted in self-defense; that at the
time she struck deceased with the axe he was standing at the
front door of the room, attempting to shoot her; that deceased,
when struck, fell across the bed. Her statements on the witness
stand as to the details of the occurrence were contradicted in
several material respects by the physical facts, and besides a
witness for the state testified that the appellant, on the morning
after the homicide, gave him a version of the affair, which he
detailed and which was quite different from the one given by
appellant in her testimony on the trial.

*Hughston & McEachern,* for appellant.

There is no evidence in this case, aside from the testimony of the appellant herself, to show how the killing occurred. Her testimony, however, makes out a clear case of justifiable homicide. She acted in defense of her life, and struck the fatal blow only when her husband was pointing his gun at her, and alleging, in a violent manner, that he would shoot her heart out if it was the last thing he ever did.

The testimony of her son, the sole witness for the state (with the exception of one other witness in rebuttal of appellant's testimony), does not make out a case of manslaughter. Although he testified that his mother killed the deceased, this is shown to be entirely a matter of conjecture on his part. He was not an eyewitness. The only way the jury could come to the conclusion that appellant killed the deceased was from her own testimony. And, as above stated, her testimony shows that she killed her husband in self-defense.

*George Butler,* assistant attorney-general, for appellee.

Although it is true that there was, aside from appellant, no eyewitness of the killing, yet the testimony of appellant is contradicted in every material detail by the physical facts in evidence. The deceased could not have been standing on the floor when struck, as appellant testified he was standing, for in such case he would have fallen on the bed with his head, rather than his feet, toward the wall. As a matter of fact the undisputed proof shows that his body lay with his feet toward the wall. On the morning after the killing, the appellant stated to a witness, who testified for the state in rebuttal, that the deceased was lying on the bed as if asleep, at the time she struck him, and that at the time he was drawing his gun up toward his head, and she thought this her only chance to kill him as he had been threatening to kill her for five or six weeks. It is true that the evidence is a little indefinite, and the facts are not as fully developed as they might have been, but it is

manifest that appellant did not act in self-defense in striking deceased; but that she killed him while in no apparent or actual danger of loss of life or of great bodily harm.

The jury saw the witnesses and their demeanor on the witness stand, and reached the conclusion that appellant was guilty, and their finding received the sanction of an enlightened and just judge. There are many occurrences on the trial of criminals which cannot be written in the record, but which often indicate more strongly than human testimony the guilt of the accused; and the cases are rare that justify a reversal of judgment on the facts alone.

CALHOON, J., delivered the opinion of the court.

The jury is under no compulsion to implicitly believe all the statements of a party acknowledging the killing of the deceased person. In this case that part of the statement of the accused which is exculpatory seems inconsistent with the physical facts and the testimony of her son as a witness.

*Affirmed.*