CHAPMAN *v.* STATE.

Division B.    Oct. 2, 1950.

No. 37570 (47 So. (2d) 844)

Cooper & Lewis, for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

**Holmes, C.**

Appellant was indicted for the murder of Perry Tools and convicted of manslaughter, and sentenced to a term of six years in the state penitentiary. She prosecutes this appeal, contending, first, that the trial court erred in refusing to grant her request for a directed verdict, and, second, that the verdict was contrary to the over-whelming weight of the evidence, and that therefore appellant's motion for a new trial should have been sustained. Her contentions are based upon a claim that her own testimony to the effect that she struck the deceased twice with a stick to prevent him from attacking her with a knife established a clear case of self-defense, and was uncontradicted by either physical facts or other material testimony. These contentions may be considered together and necessitate a statement of the material testimony.

The homicide occurred in a small frame house in the Town of Philadelphia, where the appellant and the deceased conducted a cafe as partners. The deceased was a cripple, having a cork leg, and weighed about 165 pounds, and was nearly six feet tall. The appellant weighed about 96 pounds. Only two witnesses were introduced on behalf of the State, namely, Dr. Claude Yates and Martha Houston. Dr. Yates testified that the deceased was brought to him for treatment on the night of August 22, 1949, and that he was then unconscious and suffering from a contused wound on the right side of his head, which extended from his forehead back above the right ear, and that he died from this wound on the night of August 25, 1949, without regaining consciousness. Dr.

Yates stated that he was unable to say whether the deceased was struck one time or a number of times.

Martha Houston testified substantially as follows: That she knew both the appellant and the deceased and lived in the fifth house down the street from the cafe conducted by appellant and the deceased, a distance of from fifty to seventy-five yards; that from her front porch she could see the porch and front door of the cafe; that on the morning of the day of the difficulty, she saw the deceased sitting on the porch of the cafe; that he later left and went up the hill and entered a taxicab for the purpose of going to town; that as he proceeded along the way to the taxicab he was heard to say that if any of you have a damn thing against me, you had better keep it up your sleeves. This witness testified that the deceased was staggering and was drunk. She further stated that the deceased returned later in the afternoon and was sitting on the porch of the cafe, and that at this time, she, the witness, entered her house. The witness further stated that shortly thereafter she heard the appellant hollering and cursing, and she came out on her front porch and looked in the direction of the cafe, and saw the figure of a man apparently lying in the doorway of the cafe, with his feet extending on the porch, and the remainder of his body in the house. She further stated that she then saw the appellant come out of the cafe with a stick in her hand, and go to the woodpile and exchange it for another stick, and then re-enter the cafe, and she then heard the appellant several times apply a vile epithet to the deceased and say that she would kill him, and heard sounds like she was beating him. She saw the motion of the stick as it was wielded back and forth, but she was unable to see the appellant. Later the appellant came out of the cafe and sat on the porch of the cafe. This witness identified the two sticks which had been recovered by the officers and produced on the trial, and the larger of which was taken from the woodpile and had blood on it.

The appellant testified that she and the deceased for some time had operated the cafe as partners; that on the morning of the difficulty she and the deceased had an argument, resulting from his demands upon her for money. She said that she refused to give him any money, and that he stated that he wanted the money for the purpose of going to town and buying a pistol. She said that the deceased was not drinking, so far as she could observe, and that he later went to town in a taxicab and remained until early afternoon when he returned. She further said that after his return he sat on the front porch and continued to request that she give him money, and that she continued to refuse to give him any money. She said that she then went in the house and shortly thereafter the deceased entered the house with an open knife in his hand and advanced on her saying that he was going to cut her throat. She said that she then picked up a stick, which was in the house, and struck him, and that he stumbled and fell out of the doorway, and then got up and continued to advance on her with a knife, when she struck him again. She wholly denied that she at any time was hollering and cursing the deceased, as testified to by Martha Houston, and wholly denied that while the deceased lay in the doorway she came out of the house with a stick in her hand and exchanged it for another stick from the woodpile, and returned to the house and vilely cursed the deceased and struck him while he lay in the doorway, telling him that she was going to kill him.

The proof further shows that after the difficulty the deceased was found lying on his back in the doorway with that part of his body from his knees to his feet extending on the porch, and the remainder of his body in the house, with his right hand crumpled under his body and with an open knife in his right hand. It is not clear from the testimony how long he lay in the doorway before the arrival of the police officer. The police officer testified that he was notified of the difficulty and went to

the scene about ten minutes after he received the notice, but he stated that he was unable to say how much time intervened between the time of the difficulty and the time he received notice of it. ▮▮ It will be observed that the only witnesses who undertook to give the details of the controversy were the appellant and Martha Houston. The jury were entitled to consider the testimony of Martha Houston, as well as the physical facts as indicated by the position of the deceased after the difficulty, and if they believed that such position of the deceased in the doorway was inconsistent with appellant's claim that he was advancing on her with a knife in the house when she struck him, and that the appellant was hollering and cursing the deceased, and while the deceased lay in the doorway she came out of the house with a stick in her hand and exchanged it for another stick from the woodpile, and returned to the house, and was heard to vilely curse the deceased and say she was going to kill him, and then again struck the deceased, then they were justified in finding that this conduct of appellant was wholly inconsistent with her claim of self-defense, and that she killed the deceased not in necessary self-defense but in the heat of passion. Seals v. State, Miss., 44 So. 2d 61.

This is not a case where the exculpatory statements of the accused stand uncontradicted by physical facts or other material testimony, and therefore the cases of Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498, and Weathersby v. State,165 Miss. 207, 147 So. 481, and other like decisions of this Court, are not applicable. The jury was under no compulsion to wholly accept the testimony of the appellant and reject material testimony in contradiction thereof. Wingo v. State, 91 Miss. 865, 45 So. 862.

We think that the guilt or innocence of the appellant was a matter for the determination of the jury under the conflicting testimony, and that the trial court properly denied the appellant's request for a directed verdict. We

are unable to say that the verdict of the jury is contrary to the overwhelming weight of the evidence, and we are therefore of the opinion that the trial court committed no error in overruling appellant's motion for a new trial. The case is therefore affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.