Schminke & Newman vs. Their Creditors.

---

No. 12,817.

SCHMINKE & NEWMAN VS. THEIR CREDITORS.

It is proper practice to test by rule to show cause whether or not the preliminary orders in proceedings for respite were providently issued, and if found not to be so, for the judge to seasonably revoke the same.

An agreement under which one party advances all the capital needed by another to conduct a certain business, and which stipulates that in the event he disapproves of the management of the business, he may take possession of the same, assuming all liabilities, is not a *nudum pactum*.

Agreements and covenants which parties make between themselves must control in all things not contrary to law and good morals.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*James B. Rosser, Jr.*, for Geo. F. Schminke, Appellant.

---

*Harold W. Newman* and *Dart & Kernan* for Edgar Newman, Appellee.

---

Argued and submitted May 21, 1898.
Opinion handed down May 30, 1898.

---

The opinion of the court was delivered by

BLANCHARD, J.    In January, 1895, George F. Schminke and Edgar Newman, by written articles of copartnership, formed and established

the commercial firm of Schminke & Newman for the purpose of conducting an electrical construction and supply business in the city of New Orleans. The duration of the partnership was fixed at two years, with the right to dissolve at any time by mutual consent.

Neither partner possessed any capital with which to inaugurate and carry on the business. A small sum was advanced for this purpose by Isidore Newman, Sr., and in consideration thereof it was covenanted by the partners that if at any time they disagreed as to the business, or the management of its affairs failed to meet the approval of the elder Newman, he was to be given a confession of judgment for the amount of his advances and have full power to terminate and liquidate the copartnership.

It was stipulated that Schminke should draw seventy-five dollars and Edgar Newman fifty dollars per month from the business and no more.

The firm was successful from the start. Its business developed rapidly and prospered. By July, 1895, it required more capital to meet its expansion and the elder Newman was applied to for it. On the 9th of that month the partners entered into another agreement in writing in which in was stipulated that " for and in consideration of Isidore Newman, Sr., having agreed to increase the amount of five hundred dollars which he originally advanced to the business of Schminke & Newman to five thousand dollars, or more, it is hereby agreed by said Schminke & Newman that said Isidore Newman, Sr., shall be entitled to one-third of the profits of said partnership, * * * the other two-thirds being divided equally between George F. Schminke and Edgar Newman." A second clause of this agreement recited that in the event of disagreement between Schminke and the younger Newman in the management of the affairs of the partnership, the surrender of the business with all its stock, accounts, bills receivable, fixtures, etc., should be made to the elder Newman, when called upon by him, and he should assume all the liabilities and pay to Schminke seventy-five dollars and to Edgar Newman fifty dollars, respectively, which it was stated should be in full of all their interest and claim in the business.

Following the execution of this new agreement, which admitted him as a partner in the concern, the elder Newman made advances of capital until the sums so furnished aggregated eighteen thousand dollars. Beyond a little interest paid in the first year on the

capital he had originally advanced, he has received nothing whatever from the business of the firm whose entire capital he had supplied. But the two other partners appear to have extended a liberal hand to themselves.

Notwithstanding the stipulation that the one was to draw from the business only seventy-five dollars per month, and the other fifty dollars, the evidence discloses that in the three years it was conducted preceding the present litigation, Schminke drew out for his own account ten thousand dollars and Edgar Newman seven thousand dollars. These sums thus absorbed not only exceeded the profits of the business, but made it impossible for the elder Newman to obtain his share of the profits, which was one-third.

Not only that, but by their overdrafts the other two partners were, in the absorption of his share of the profits, running up a large indebtedness to him on their personal account, and Schminke, running ahead of the younger Newman on his overdrafts, was becoming, in that way, largely indebted to the latter on personal account.

The elder Newman could not permit this condition of affairs to go on. He sent repeatedly for the younger men, cautioned them about their extravagance and admonished them that unless their overdrafts ceased and they confined themselves to something like the allowances stipulated in the articles of agreement he would be compelled to exercise his right and take possession of the business. The evidence shows his course to have been one of leniency and forbearance. His son, the younger Newman, seems at last to have heeded his father's advice and ceased to overdraw. But not so with Schminke. He continued to overdraw until finally the elder Newman determined to put a stop to the business as then conducted.

He informed Schminke of this purpose and suggested and proposed to him to transfer his interest in the firm to J. K. Newman (another son), who would assume his liabilities to the creditors as well as to the other partners, and pay him one hundred dollars besides. This was what the articles of copartnership and the supplemental agreement of July 9, 1895, authorized Isidore Newman to do in his own behalf. The only substantial difference between what was thus authorized and what he proposed was the substitution of his son, J. K. Newman, for himself.

Schminke asked time to consider and it was given him. He returned with a suggestion that Mr. Newman make him another

33

proposition looking to the purchase by him (Schminke) of his (New-
man's) interest in the concern.    The latter readily consented to this
and proposed that Schminke should buy him out and keep possession
of the business himself, and to this end he agreed to take a sum equal
to what the business was due him, and to make it easy for Schminke
to effect the arrangement, he offered to take one-quarter of the
amount in cash and the remainder in one, two and three years with
six per cent. interest.    Schminke expressed himself as entirely sat-
isfied with this and told Mr. Newman he would accept either the
one or the other of his offers that day, and mentioned the hour at
which he would do so.

Instead of returning at the hour indicated, he repaired with his
counsel to the court house  and there filed the present suit  against
the creditors of his firm (naming Isidore Newman as one of the
creditors) for a respite.

In taking so important a step in the firm's affairs he consulted
neither of his copartners and they were in ignorance of the same
until his return from the court.   His evident motive was to forestall
the action which it was the elder Newman's right to take under the
agreements upon which the copartnership was based.

Discovering what had been done and strongly objecting to it, the
younger Newman, the same day, took a rule in the proceedings to
show  cause  why the  preliminary order for respite should not be
revoked and set aside.   He averred that his partner Schminke had
acted without authority, that the firm was solvent, did not need a
respite, and that he (Newman) was then and there ready and willing
to pay on its behalf all of its indebtedness.

He averred that the action of Schminke was unjustifiable, not
taken in good faith, and was injurious to the interest of the firm and
of himself (Newman).

Schminke, through counsel, excepted to this rule as premature,
and on the ground that the preliminary order for respite could not
be set aside in the summary manner attempted—the remedy of
mover in rule being by opposition to the homologation of the
deliberations and recommendations (when had) of the meeting of
creditors.

There was no force in this exception.   It was proper practice to
test by rule to show cause whether or not the order was right-
fully and providently issued, and if found not to be so the judge
could seasonably revoke the same.

In his answer to the rule Schminke attempted to justify himself in not consulting his partner in reference to the proceedings for respite by charging him with being a party to a conspiracy to crowd him out of the firm.

The evidence taken on trial of the rule negatives absolutely this allegation.

There was judgment making the rule absolute and revoking and annulling the order and proceedings taken for respite, and from that judgment this appeal is prosecuted.

We find no warrant, either in the facts of this case or in the law, for reversing this judgment.

The contention urged on behalf of Schminke that the agreement of July 9, 1895, is a *nudum pactum* and without legal effect is not tenable. Since Isidore Newman, Sr. was furnishing all the capital required by the copartnership to do business, the stipulation therein made as to his authority over the business and its management can not be held to be unreasonable and improper; and, certainly, the funds he agreed to supply constituted ample consideration for the stipulation that he was to receive one-third of the profits of the business venture. Nor did the force of this agreement cease with the expiration of the limit of the copartnership as fixed in the articles of agreement previously executed by Schminke and the younger Newman between themselves. There was no term fixed in the agreement of July 9, and while the preceding articles of copartnership between the original members of the firm were given, in that instrument, the duration of two years, it is a fact that the firm was not dissolved at the expiration of the two years, but continued right along without any new agreement, and, presumably, under the old stipulations and conditions.

The agreements and covenants which these parties made between themselves must control in all things not contrary to law or good morals, and this is so whether we view Isidore Newman, Sr. as partner or creditor of the firm of Schminke & Newman.

Judgment affirmed.