JANVIER, Judge.
This is a suit by the prospective purchaser of real estate for the return of a deposit of $950. The defendants are the prospective vendor and the real estate agent who brought the parties together and with whom the deposit was made. Both defendants, after denying that plaintiff should be allowed to recover the deposit, reconvened against plaintiff, praying that the deposit be declared forfeited, and, in addition, praying judgment for $400 as attorney’s fee, and for $11 alleged to have been expended “for certificates and research costs,” and the real estate agent, in addition, praying also for judgment in his favor against plaintiff for $475 as his commission, alleged it to have been earned as a result of his having negotiated the real estate transaction.
There was judgment in favor of defendants, rejecting plaintiff’s demand for the return of the deposit, and also against plaintiff in the sum of $686, representing a commission of $475 due to the real estate agent, and $200 as attorney’s fee, and $11, representing “cost of certificates.” Plaintiff has appealed.
On November 2, 1951, plaintiff, W. G. Germain, through the real estate agent, George T. Weller, made a written offer of $9,500 cash to purchase the real estate in question which belonged to Merlin R. Wilson, who had listed it for sale with the agent at an asking pric'e of $10,500. This offer of $9,500 cash was accepted by Wilson, the owner, on the next day, November 3, 1951. In the offer it was stipulated that the act of sale would be passed before the notary selected by the purchaser, Germain, on or before December 10, 1951.
In the contract, which was on a Standard Form of “Real Estate Board of New Orleans, Inc.,” it was provided that the property would be purchased as per title and “subject to title restrictions if any, * * It was also provided that the purchaser would deposit the sum of $950 and that:
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.”
It was also provided that should the deposit be forfeited, the commission of the agent would be paid out of the deposit, and that the seller would have the right to proceed against the purchaser for the amount of the commission, and the commission of the real estate agent was fixed at five per cent. It was also provided that should either party fail to comply with the terms of the contract, he would be obligated “to pay the agent’s commission and all fees and costs incurred in enforcing collection and damages.”
The purchaser, who had agreed to pay cash for the property, desired to finance his transaction through a homestead association, and the Lawyers Title Insurance Corporation was called upon to examine and report upon the title to the property. That corporation, on December 10, 1951, reported that there were certain restrictions which might affect the use to which the prospective purchaser might put the property and also certain restrictions *334 concerning possible subdivision and resale of part of the property. These restrictions, as reported by the Lawyers Title Insurance Corporation, and which admittedly exist, read as follows:
“Property conveyed to be restricted to residential use only, * * * and not to be re-subdivided and resold in smaller units than shown on said plan.”
The purchaser states that it was his purpose to conduct his plumbing business from the premises which he had agreed to purchase, and that he also intended to subdivide the property and possibly sell a portion of it, and that consequently he was unwilling to accept title subject to these restrictions.
It is the contention of the prospective vendor and of the real estate agent that, in the contract itself, that is to say, in the offer which was accepted, it was stipulated that the purchaser would accept title subject to such title restrictions as might exist, and that consequently he was required to accept title even though the restrictions quoted did affect the title.
It is contended by the prospective purchaser, Germain, that the vendor, or the real estate agent, expressly told him before the contract was entered into that he might conduct his plumbing business from the premises and that he might subdivide the property and sell a portion of it.
At this stage of the controversy, the attorney whom the plaintiff (purchaser) had employed, advised the purchaser that it would be advisable to secure an extension of the time within which he might take title, and accordingly there was prepared by the attorney for the plaintiff a written document which was executed by Wilson, the vendor, and Germain, the purchaser, under which it was agreed that the purchaser should have until February 1, 1952, to take title, and that in all other respects the agreement should remain ttnchanged.
It is shown that thereafter the purchaser was formally called upon to take title and that he refused to do so. He then brought this suit for the return of the deposit.
In the first place, as we have stated, it is the contention of defendants (the vendor and the real estate agent) that it is stipulated in the written contract, that title would be accepted subject to “title restrictions if any,” and that there might not be introduced any oral testimony altering the terms of the written contract by .showing that it was agreed, or that at least plaintiff was told that there existed no such restrictions. In other words, it is the contention of the defendants that plaintiff should not have been permitted to testify that he had been told that he might conduct his plumbing business from the premises and that he might sell off a portion of the property. In the second place, the defendants maintain that even if plaintiff be permitted to offer such evidence, still he should not be permitted to escape the forfeiture of his deposit, nor liability under his contract, for the reason that, by asking for and obtaining an extension of the time within which he might comply with his agreement, with full knowledge at that time of the existence of the title restrictions, he in effect consented to accept the title subject to the restrictions, and, as a result, must bear the consequences of his failure to comply with his obligation to take title.
 It is so well settled that a prospective purchaser of real estate is relieved' from his obligation to comply with his offer to buy if it appears that there are undisclosed title restrictions which would affect the use or sale of the property that we would be very loath indeed to hold that a purchaser is bound by such a small printed clause as is found in this contract; that the title is to be accepted subject to title restrictions if any. It is obvious, we think, that such a clause in small printed words in the body of the contract evidences a scheme to trap the unwary purchaser, and that it should not be enforced’ except where such restrictions as may actually exist are brought to the attention, of the prospective purchaser.
*335 But we find it unnecessary to reach a conclusion on this question of whether the printed clause deprived the purchaser of his right to refuse to take title because of the title restrictions, and we find it unnecessary to reach a conclusion on this issue because we feel that even if it be conceded that the testimony was properly admitted and that he was told by the agent that there were no such restrictions, still his obtaining of the extension after he learned of these restrictions deprived him of the right to refuse to take title.
We feel that, unfortunately for plaintiff, when he, with full knowledge of those restrictions, requested and obtained an extension of the time within which he might comply with his original agreement, he deprived himself of the right to object to the title.
Plaintiff attempts to escape the effect of his having agreed to the extension by contending that his desire for the ■extension was based on his mistaken idea that he would have lost his deposit at once had he not obtained the extension. The argument is made that he thus acted as a result of an error of law and that consequently, because of the effect of Articles 1820, 1821, 1822 and 1823 of our LSA--Civil Code, he was not bound as he might otherwise have been by obtaining the extension of the original agreement. He says that his error of law as to what would have been the disastrous effect had he not obtained the extension was the result of statements made to him by one of the defendants, Weller, and also by his then attorney, both of whom, according to his testimony, told him that if he did not secure the extension, he would at once forfeit the deposit.
In the first place, it is not at all certain that either Weller or his attorney so .advised him. Weller says that what he told the plaintiff was that
“he had better get advice from his attorney because he would be in danger of being put in default.”
The attorney whom he had at that time consulted says:
“I didn’t discuss deposit or forfeiture at any time that I recall. I advised him to try to negotiate some way out of the transaction if he didn’t want the property.”
But even if we assume that both Weller and plaintiff’s attorney told him that he would lose his deposit if he did not obtain an extension, still we think he would be in no better legal situation. He had executed an agreement to buy property and he discovered that, because of restrictions, he did not want to consummate the transaction. Because of the fact that the agreement to buy contained a stipulation which was susceptible of being interpreted as an agreement to accept title in spite of the restrictions there was danger that he might at once lose his deposit if he would allow himself to be placed in default. With this possibility confronting him, he thought it best to obtain time within which he might attempt to work out a solution. Thus his securing of the extension was in effect the obtaining of a compromise. He was willing to agree to carry out the terms of the original contract if given time rather than run the risk of being placed in default at once, with the possible result of losing his deposit and becoming otherwise liable under the contract. Even if he was in error as to the law, that is to say, as to his liability under the facts of which he was well aware, still he would not have been relieved by this error of law, since we think that his act was an attempt to obtain a compromise or at least, to better his situation, and if so, then such an error of law would not relieve him because it is so stipulated in Article 1846 of our LSA-Civil Code:
“A contract, made for the purpose of avoiding litigation, can not be rescinded for error of law.”
But let us say that in addition to the fact that there is grave doubt as to whether plaintiff was advised by anyone that he would lose his deposit if he did not *336 obtain an extension, his own testimony-makes it very doubtful whether such advice was the cause of his securing the extension, because when, after much discussion, he was asked why he signed this extension and whether the reason therefor was his belief that if he did not do so he would lose the deposit, he gave the following testimony:
“Q. Did you believe that you would lose it? A. Yes, sir. I believed that I would lose my deposit.
“Q. Is that why you signed the extension? A. No, I signed the extension because Mr. Wilson suggested that we have this extension made on this thing because Mr. Wilson told me at the time that he had two or three other parties who were very much interested in this property and he could sell the property but he would have to grant me an extension on this thing and let Mr. Weller proceed to sell this property.
“Q. Is that the only reason you signed the extension? A. Yes, sir, that’s the only- reason.”
Here again his contention runs counter to the provisions of Article 1846 of our LSA-Civil Code, for it is also provided in that article that error of law shall not be sufficient to- avoid the effect of a contract unless “such error is its only or principal cause”.
Unless it be felt that Weller, the agent, did tell him that he, Weller, would attempt to sell the property for him when the extension was executed, we think it clear that Weller did not tell him that he would be relieved of his obligation, but that he merely said that, if another purchaser could be found, the property would be transferred to the new purchaser and then Germain would be relieved of his obligation.
We think it necessary to discuss the fact that it is contended by the plaintiff that the original contract was null and that therefore the extension of the contract could not be considered as a novation, since no new contract could have had for its consideration the fact that it grew out of an original null contract. As a matter of fact, the original contract was not null; it was not void ab initio; it was merely voidable. Surely Germain could have insisted on taking title had he desired to do so. The restrictions might have been found most favorable had he desired to retain the entire property and had he desired to protect it against commercial enterprises in the neighborhood. Accordingly it was only a voidable contract, and therefore when he did not seek its nullity but obtained an extension instead, we see no reason why he should not be bound by the terms of the extension.
In Tulane Law Review, Vol. 25, at page 100, will be found a discussion of the law of novation. 'In that article it is stated that:
“Although the general rule is that a previous valid obligation is necessary in order to- effect a novation, the validity of the original contract is not essential in certain circumstances.”
But, as we have said, an obligation that is merely voidable and not void surely may not be classified as an obligation which is not valid. We think that the extension of time within which to carry out the obligation which, though voidable was not null, was a sufficient consideration for the execution of the extension,, and that consequently plaintiff, in executing the extension, made himself liable to take the property, even subject to the restrictions. Thus his failure to comply with his obligation made him liable under the terms of the contract.
Under the terms of the contract the deposit necessarily was forfeited, and he became liable for such fees and expenses as were made necessary by his failure to comply with his contract.
It was stipulated in the district court that if any attorney’s fee was due, it should be $200, and counsel for defendants (plaintiffs in reconvention) contend here that that agreement merely covered the- *337 fee for trial in the district court and that the fee should be increased as compensation for services rendered in the appellate court.
Even if we agreed with them on this point the amount of the judgment could not be increased since there is found no answer to the appeal.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed