## WILLETTE *v.* STATE.

No. 39713 June 13, 1955 80 So. 2d 836

*Melvin, Melvin & Melvin,* Laurel, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

The appellant, Charles J. Willette, was indicted in the Circuit Court of the First Judicial District of Jones County, Mississippi, for the murder of Lee Smith. He was found guilty as charged and was sentenced to life imprisonment, from which judgment he appeals.

The record discloses that the appellant and the deceased were residents of Covington County, Mississippi; that they had a business transaction involving a timber deal in Jones County. The deceased owed the appellant $50.00 which he had promised to pay Saturday, December 6, 1952. On that day, the deceased left a check in the amount of $48.75 at a filling station in Seminary, which check was payable to the deceased and was properly endorsed. It is undisputed that the appellant took the check and cashed it. At the time he received the check from the operator of the filling station, he remarked that, "it ought to be $50.00." Appellant then went to the home of the deceased, but he was not at home, and according to the testimony of his widow, the appellant became angry and "he poked that check towards

me, and said, he promised to leave me $50." Appellant then said "I am going to have my money, there is a way I can get it, and I am going to get it."

On the following Monday, December 8, 1952, the appellant went to the woods where the deceased was logging to locate and show deceased some land lines. This was around the noon hour and the deceased had not returned from lunch and the appellant waited for him. When the deceased returned, they proceeded into the woods to locate the lines. The deceased took an ax with him. The appellant and the deceased were later seen in the woods standing close together. Hiram Fairchild, a witness for the State, testified that he heard a shot, looked up and observed appellant and deceased standing there with their chests together and that two more shots were fired; that all three shots were fired "as fast as a fellow could pull the trigger." This witness further testified that after the shooting he did not see but one man standing, and that the appellant then walked to where he and the others were working, which was approximately one hundred yards from the scene of the homicide, and said: "If you men hadn't saw it, there wouldn't have been nobody to have told it." This witness testified that the ground was burned over and practically clean except for a few leaves which had fallen, and that he was standing where he could see anything from waist-high upward; that if a man had an ax up, he could have seen it, but if it was below the waist, he could not; that he did not see an ax until he went to the scene.

Calvin Helveston testified that he was cutting wood for the witness Fairchild; that he looked up and saw two men "leant together" and heard three shots fired; that the appellant walked away and came to where they were cutting wood and made similar statements as testified to by the previous witness. He further corroborated the testimony of the witness Fairchild as to the condition of the ground and that he could see both men above the waist. He also stated that he could have seen an ax if

either man had had one, but that he did not see one, and he could see the deceased's hands at the time of the shooting for the reason that the deceased was facing him and the appellant was not. He further testified that the appellant and the deceased were "scuffling and that they advanced on each other and the deceased "must have pushed Willette back some."

Cecil Biglane, another witness, testified that he saw the appellant and deceased come together, then heard the shots; that the appellant came down where the men were working, with the pistol still in his hand, and said to them: "I just done something I hated to do, but I shot a man up there . . . if we hadn't seen it, there wouldn't have been nobody to have told it." These witnesses then went to the scene of the homicide where they found the deceased lying on his back, his feet within two or three feet of a large oak tree, and the ax which belonged to the deceased was approximately twelve or fifteen feet from the head of the deceased with the handle pointing toward him. A pair of gloves were found within a few inches of the ax.

According to the testimony of the State's witnesses the ground at the scene of the homicide was soft and clean except for leaves; that there were no marks or evidence of any kind on the ground that would indicate a struggle had taken place; there was no indentation on the ground where the ax was found. The evidence shows that the deceased was shot three times — once in the left shoulder and twice in the chest, and that all of the shots entered the body of the deceased from the front and there were powder burns around each of the wounds.

The Sheriff of Jones County, along with the deputy sheriff and others, went to the scene. His testimony as to the condition of the ground was to the same effect as the other witnesses. The deputy sheriff, Paul Bazor, testified that he measured the distances and that Smith's body was three or four feet from the tree, that the ax was fourteen feet from his head and twenty feet from

his feet, and the ground was soft, burned over, and that there was no indentation of any kind on the ground where the ax was found. Three photographs of the scene of the homicide were introduced in evidence by the State and two by the appellant.

The appellant, testifying in his own behalf, stated that he was 74 years of age; that he was a timber estimator; that Smith, the deceased, told him on Saturday morning he would leave $50 for him at Cranford's Service Station in Seminary, and said "when you show me the other lines, I will pay you." He admitted that on the afternoon that he got the check for $48.75 he went to Smith's home to see why he had not left $50 for him. He did not find him at home and he told Mrs. Smith that there were laws in Mississippi that would give a man what was owing to him and that he told her that some of the balance due was for labor. He testified that the next time he saw the deceased was in the woods on Monday afternoon; that he showed him the lines and a corner nearby; that when they had located the lines, he called upon the deceased to pay him the balance that he owed him and the deceased told him he did not have any money with him, and took out his purse and opened it to show appel- The appellant testified that the deceased then became angry, threw the purse on the ground, picked it up again, and walked back to the fence post where he picked up his ax. He began cursing the appellant and Butler (former owner of the timber) and stated: "You and Butler . . . double-crossed me — I will cut your brains out," and the deceased started towards him; that he shot at his arm as he didn't want to kill the deceased but only wanted to stop him, but in just a few seconds the deceased ran up and grabbed his left arm; that he pressed the gun against his body and pulled the trigger; that the deceased released his hold upon appellant, dropped the ax, and staggered twelve or fifteen feet backwards.

On cross-examination, the appellant admitted that he went to Mrs. Smith's home, and that she asked him to

leave. At that time he had no cross words with her. He testified that he always carried a gun with him when he went to the woods. He then demonstrated before the jury how the deceased had the ax up at the time of the killing, showing them that the ax was over the deceased's left shoulder, and stated that when the deceased made a step forward, he shot him; that the deceased then grabbed him with his right arm and "hugged me up" and he put the gun on his body and pulled the trigger.

The appellant introduced two witnesses seeking to contradict the State's witness Fairchild as to the details of the homicide. He also introduced ten witnesses from Covington County who testified as to appellant's reputation for peace and violence and all stated that it was good.

The main assignment of error argued by appellant is that the court erred in refusing to grant the requested peremptory instruction. The appellant relies on the rule announced in the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, and many other cases to the same effect, which is: "Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Wesley v. State, 153 Miss. 357, 120 So. 918; Walters v. State, 153 Miss, 709, 122 So. 189; Gray v. State, 158 Miss. 266, 130 So. 150."

We are of the opinion that the appellant does not come within the rule in that the foregoing statement contradicted by the physical facts and circumstances as well as the testimony of the witnesses for the State. In addition, the testimony given by the appellant and the demonstration by him before the jury showing that the deceased held the ax up, which was contradicted by State's witnesses, was sufficient for the jury to believe that the deceased was unarmed at the time he was killed.

The appellant argues that the State's witnesses corroborate the appellant in that the deceased was advancing upon the appellant and that they were in a death struggle. The jury could also have reasoned that when the appellant pulled his pistol, the deceased rushed upon him in a futile effort to protect his own life. All the evidence on the part of the State was that the ground was soft and there were no marks or indentations on the ground where the ax was found. It was within the province of the jury to find that the deceased had laid his ax and gloves down. "The jury is under no compulsion to implicitly believe all the statements of a party acknowledging the killing of a deceased person." Wingo v. State, 91 Miss. 865, 45 So. 862. Grady v. State, 144 Miss. 778, 110 So. 225. The court correctly refused the request for a directed verdict.

The appellant next argues that the court erred in admitting the photographs in evidence. These photographs do not come within the condemnation of the Court in the cases of Fore v. State, 75 Miss. 727, 23 So. 712; Brett v. State, 94 Miss. 669, 47 So. 781; Martin v. State, 94 Miss. 669, 47 So. 781; Martin v. State, 217 Miss. 506, 64 So. 2d 629; Buie v. State, 217 Miss. 695, 64 So. 2d 897.

"Photographs, whether original or copies, are admissible as primary evidence upon the same grounds and for the same purposes as are diagrams, maps, and drawings of objects or places. Photographs have been received for the purpose of describing and identifying premises which were the scene of the crime and they need not show all the premises if they show the material part." Underwood's Criminal Evidence, (3rd ed.) Sec. 103. Sims v. State, 209 Miss. 545, 47 So. 2d 849.

The appellant also contends that the court erred in granting the State the following instruction: "The court instructs the jury for the State that the deliberate use of a deadly weapon in any difficulty, not in necessary self-defense, is in law evidence of malice." The giving of this instruction was error, Tullos v. State, 75

So. 2d 257; Johnson v. State, 77 So. 2d 824; but under the facts in this case, we hold that it was not prejudicial to the appellant. The issue in the instant case was murder or justification, as the appellant admitted that he deliberately killed the deceased in order to protect his own life. In Harris v. State, 175 Miss. 1, 166 So. 392, this Court said:

"The granted instruction complained of instructs the jury for the state 'that malice is implied by law from the nature and character of the weapon used, and that the deliberate use of a deadly weapon in a difficulty, and not necessarily in self-defense, is in law, evidence of malice.' All the facts and circumstances of the homicide were fully given in evidence; therefore this instruction should not have been given. Walker v. State, 146 Miss. 510, 112 So. 673; Smith v. State, 161 Miss. 430, 137 So. 96; Winchester v. State, 163 Miss. 462, 142 So. 454. The error committed in granting the instruction, however, was harmless. If the homicide was committed as the State's witnesses said it was, the crime thereby committed was undoubtedly murder. If it was committed as appellant's witnesses said it was, it was undoubtedly committed in self-defense. This was the only question the jury had to decide, and the law relative thereto was correctly stated in other instructions. Moreover, the instruction expressly charged the jury that malice could not be inferred from the use of a deadly weapon if the homicide was committed in self-defense." Hughes v. State, 207 Miss. 594, 42 So. 2d 805; Jackson v. State, 218 Miss. 598, 67 So. 2d 520; Smyley v. State, 79 So. 2d 539.

 We have examined the other assignments of error and find them to be without merit. The appellant obtained nineteen instructions, which presented every phase of his defense. He was ably represented in the court below. We are of the opinion that the guilt or innocence of the appellant was a matter for the determination of the jury and that their verdict was supported by the evidence. We are unable to say that the verdict of

the jury is contrary to the overwhelming weight of the evidence and the case is accordingly affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.