SLYTER *v.* STATE

No. 42575      February 11, 1963      149 So. 2d 489

*Goza & Case,* Canton, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

Appellant was indicted in the Circuit Court of Madison County for the murder of Sandra Holderfield, and was tried, convicted, and sentenced to death, from which judgment he prosecutes this appeal.

The record discloses that the appellant, on Saturday afternoon, April 21, 1962, made arrangements by telephone to pick up Sandra Holderfield to baby-sit that night. He gave a description of his car as a 1959 white Chevrolet, and at approximately seven o'clock P.M. he drove to a point on North Jefferson Street in the City of Jackson, across the street from the Holderfield home, and by pre-arrangement with Sandra, she came out and got in the car with him. The appellant and Sandra did not know each other. Sandra's younger sister saw her enter the 1959 white Chevrolet automobile and drive away, heading north. This was the last time Sandra was seen or heard of until her body was found the next afternoon at approximately five o'clock P.M. on a rural road in the southern part of Madison County, described as the "old Johnson Ferry Road."

Officers were notified and immediately went to the scene and investigated. There was evidence of a scuffle;

blood was in many places in close proximity to the body. Deceased's clothes were scattered around the area where the body was found, and she had on a blouse over her shoulders and one shoe. The body was removed to a funeral home where Dr. Featherston, a pathologist, examined it and took various specimens of the blood and hair of deceased. These were later sent to the FBI Laboratory in Washington, D.C. for examination. The doctor testified that the body had been injured in several different fashions; that the injuries to her head, face and the fractured skull were produced by a blunt instrument; and in addition, she had a crush type of injury involving fractures and crushing of the ribs and chest cage, fractures of the pelvis and of the left bone in the thigh. She had many other injuries which will not be enumerated. The cause of death was due to loss of blood and shock from the multiple injuries she had received.

On the following morning, Monday, April 23, 1962, officers found a car of the same description in the street in the City of Jackson. They observed streaks of blood on the driver's side and saw other blood and hair on it. The car was taken to a filling station and examined by Sam Ivy, Chief Identification Officer for the Mississippi Highway Patrol. He took many samples of blood and hair found underneath the automobile, and these were also sent to the FBI Laboratory in Washington for analysis.

The appellant saw the officers at the car and telephoned and went to see Father Edward Balser, a Catholic Priest at St. Peter's Rectory in Jackson, and while there he drank a cup of poison. The Priest took him to the Baptist Hospital. Chief of Detectives M. B. Pierce and other officers arrived at the hospital soon thereafter. In the presence of Father Balser and the officers, the appellant confessed that he killed Sandra Holderfield with a tire tool and told the officers that the tire tool was in the trunk of the car; that the car was a stolen

car, and gave Chief Pierce the keys to it; that he drove the car over the body of Sandra twice, then backed the car up and took the tire tool and put it in the trunk and then dragged her body off into some weeds near a pine tree. The next day a written confession, in question and answer form, was obtained by the officers, although it was not signed by appellant. In this confession, appellant again admitted he killed the deceased and gave all the details.

Two FBI men from the Laboratory in Washington testified in the case. One testified that the blood found on the tire tool and underneath the automobile was human blood, that it was type A, and was the same type as that taken by the pathologist from the body of deceased. The other witness testified that the hair on the tire tool and that taken from underneath the car matched the hair of deceased.

Appellant assigns as error that the court erred in (1) overruling his motion for a change of venue; (2) the alleged erroneous admission of certain evidence over objection; and (3) in granting the State's instruction No. 1. After a careful examination of this voluminous record, the guilt of the appellant is established by his own confessions, and the confessions, both oral and written, are consistent with every material fact and circumstance in the case. In other words, the facts and circumstances in this case corroborate fully the confessions of the appellant.

The appellant filed an application for a change of venue, setting out that he could not obtain a fair and impartial trial in Madison County by reason of the prejudgment of the case and ill will. Fourteen witnesses from various parts of Madison County testified for the State that the appellant could obtain a fair trial in Madison County and there was no prejudgment of the case. (Hn 1) We have held in numerous cases that a granting of a change of venue is largely in the discretion of

the trial court, and a judgment of conviction will not be reversed on the ground that a change of venue was refused unless it clearly appears there was an abuse of this discretion. (Hn 2) We do not think there was an abuse of discretion in this case. Shimniok v. State, 197 Miss. 179, 19 So. 2d 760; Wheeler v. State, 219 Miss. 129, 63 So. 2d 517; Gallego v. State, 222 Miss. 719, 77 So. 2d 321.

(Hn 3) The appellant argues that the court erred in admitting in evidence certain photographs depicting the scene of the crime and the body of the deceased. Although these photographs might be gruesome, we have held that this does not render the photographs incompetent if they are pertinent, material and relevant, and that appellant is in no position to complain of the portrayal of a condition which he himself created. Stokes v. State, 240 Miss. 453, 128 So. 2d 341; West v. State, 218 Miss. 397, 67 So. 2d 336; Hancock v. State, 209 Miss. 523, 47 So. 2d 833; Willette v. State, 224 Miss. 829, 80 So. 2d 836; Price v. State, (Miss.), 54 So. 2d 667.

(Hn 4) The appellant next argues that the court erred in admitting the testimony of Sam Ivy regarding the search and inspection of the automobile and in admitting in evidence the samples of hair and blood recovered therefrom. He further argues that the court erred in permitting evidence that the automobile was stolen. (Hn 5) Here the appellant objects to the search on the ground that the officers did not have a warrant, therefore, the testimony showing the automobile was a stolen car was admissible for the reason that appellant could not complain of the search of the car. (Hn 6) This Court has held in many instances that for one to be in position to complain of an illegal search one must either be the owner or in the lawful possession of the property searched. Rose v. State, 222 Miss. 699, 76 So. 2d 835, and authorities there cited.

(Hn 7) Appellant next argues that the court erred in admitting in evidence the written but unsigned confession and the oral confession made to Chief Pierce and Father Balser. A preliminary inquiry was held in the absence of the jury as to the admissibility of the written but unsigned confession. Appellant testified in the absence of the jury regarding the confession and did not contend that the confession was obtained by force, violence, threats, or rewards, and he did not deny making the confession. His main argument seems to be that he was in a physically weak condition due to drinking the poison and the treatment therefor. Upon this inquiry the court admitted the confession into evidence as being freely and voluntarily made. This was not error. Price v. State, (Miss.), 54 So. 2d 667, and authorities there cited.

Father Balser and Chief Pierce testified practically to everything said and done while the appellant was in the hospital. True, the appellant was nauseated and sick by reason of the medicine administered to him to expel the poison, however, the doctors who attended him testified that the medicine given did not and would not effect his mental faculties. The appellant argues that he requested a preliminary hearing, but the records reveal that he objected to the testimony of both Father Balser and Chief Pierce on the ground that it was not shown to be free and voluntary. However, we do not find in the record where a preliminary inquiry was requested. (Hn 8) But be that as it may, the court committed no error in admitting the oral confession. In Pringle v. State, 108 Miss. 802, 67 So. 455, this Court said:

"It is safer for the trial judge to ascertain that confessions obtained from prisoners were made without hope of reward, or fear of punishment, as a condition precedent to the admission of the testimony; but where it is manifest that the witness has told all that was said and all that occurred, and his testimony shows that the statements of the accused were free and voluntary,

there is no reason to reject the evidence, because the precise formula was not observed in advance of the admission of the evidence.''

**(Hn 9)** The appellant next argues that the court erred in granting the State instruction No. 1. The granting of this instruction was error and should not have been given. However, it was not reversible error, because it referred to a defense of insanity which was not supported by any evidence. Both the State's and defendant's instructions placed upon the State its proper burden of proof to sustain the charge of murder. Hence defendant could not have been prejudiced by this instruction in any way. Moreover, appellant on this appeal makes no contention that he was or is insane or that he did not murder the girl. All the evidence shows he did.

This Court has held in a number of cases that before this Court will reverse a cause, it must be satisfied of two facts: First, there must be error; and, second, the error must be prejudicial to the appellant. Wexler v. State, 167 Miss. 464, 142 So. 501, and authorities there cited. In Wexler, supra, the Court said:

''. . . . . As stated above, this is a case where the evidence shows without dispute the guilt of the defendant to a moral certainty and beyond every reasonable doubt. Every material fact and circumstance in the case points to the guilt of appellant. On the other hand, there is no fact or circumstance in evidence which points to his innocence; therefore, the jury, under the law and the evidence, could not have justly reached any other verdict than that of guilty. In such a case there is no use considering errors committed by the court in the conduct of the trial, unless they be so grave as to deny the defendant the benefit of some fundamental right.''

**(Hn 10)** We are of the opinion that the appellant's guilt is manifest from the evidence beyond all reasonable doubt and to a moral certainty, and the jury could not

under their oaths have arrived at any verdict other than one of guilty. The other assignments are without merit.

Affirmed, and Friday, March 15, 1963, is hereby fixed as the date for the execution of the death sentence in the manner provided by law.

All Justices concur.

ON MOTION TO SET NEW DATE FOR EXECUTION EN BANC:

The State moved to set a new date for execution in order for the Court to have sufficient time to pass upon the suggestion of error of appellant. Accordingly, the execution of the death sentence is reset for Friday, March 29, 1963.

State's motion to reset date of execution sustained and fixed as Friday, March 29, 1963.

All Justices concur.