227 So.2d 454 (1969)
R.B. (Bud) FORD
v.
STATE of Mississippi.
No. 45464.
Supreme Court of Mississippi.
September 29, 1969.
Rehearing Denied November 3, 1969.
*455 Ottis B. Crocker, Jr., Bruce, for appellant.
A.F. Summer, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant R.B. (Bud) Ford was charged with murder in connection with the death of his wife. He was tried in the Circuit Court of Calhoun County and was found guilty of manslaughter. He was sentenced to serve a term of twenty years in the State Penitentiary. He has appealed to this Court. We affirm.
The proof in this case establishes that appellant left his home about 6 P.M. on the afternoon of May 4, 1968, and went with one Bunk Roberts to a place known as "Trailer House." According to the testimony of Bunk Roberts this was a place where beer was sold and that he and the appellant drank some beer. Appellant returned to his home shortly after 10 P.M. that night. There were several people at his home on this occasion and when he reached the room in which his wife and some of the other people were congregated, he fired a shot from a pistol which he had with him. Immediately after he fired his wife fell. She had been shot in the forehead. Appellant admitted that he fired a shot in the direction of his wife, but denied that the bullet from his gun struck his wife. He testified that he was shooting at a man who had his wife "all hugged up." He said, "and so I just walked on inside the door, just on inside the door, about that far, and said to him, `What's all this going on?' and he said, `None of your goddamn business' and so he started, and I had my automatic in my hand. And when he started out with his, I upped, and he jumped behind Virgie and I was pulling the trigger as he jumped behind Virgie, and I shot." Appellant also testified that immediately after he shot, a gun was fired by some unknown person directly behind him. He said the bullet grazed his neck and struck his wife and this was the shot that killed her.
After the shooting appellant went to the home of D.B. Mallory and Mr. Mallory called the sheriff of the county and an ambulance. Prior to the time that the sheriff arrived appellant turned over to Mr. Mallory a .32 caliber pistol that he had in his possession. It was established by the proof that the bullet removed from the head of the deceased was not fired by the gun which was turned over to the sheriff.
The evidence is conflicting as to whether one or two shots were fired. Proof on behalf of the state was that only one shot was fired and that there was no one behind appellant when he fired the shot. While the proof on behalf of the defendant is to the effect that two shots were fired, one by appellant and another by some unknown person.
*456 Appellant assigns numerous grounds for the reversal of this case. We have considered each error assigned but will only discuss the errors assigned which merit discussion.
Appellant urges that the action of the trial court in overruling his motion for a continuance was reversible error. The basis for the motion for continuance was the absence of a witness, which according to the proof was a citizen of Webster County but was then residing in Chicago, Illinois. We have carefully considered this assignment of error and cannot say that the trial court abused its discretion in refusing to grant the continuance under the circumstances of this case. The absent witness was shown to be in Chicago, Illinois, at the time of the trial. Appellant testified in support of his motion, but did not testify as to what effort, if any, he had made to secure the presence of this witness. He said the witness had been in Chicago about a month. The case was tried on October 2, 1968, and after his conviction the appellant filed a motion for a new trial during the term. By agreement, the motion for a new trial was set for hearing in vacation and it was heard on November 25, 1968. One of the grounds for a new trial was the overruling of appellant's motion for a continuance. However, appellant did not show that he had made any effort after the trial of the case to secure the attendance of the absent witness and have him present when the motion for a new trial was heard. Neither was an affidavit procured from the witness setting out the facts he would testify to on another trial. In King v. State, 251 Miss. 161, 168 So.2d 637 (1964), we set out the well established rules with regard to requirements that must be met by defendant when he seeks to put the trial court in error for failure to grant a continuance due to the absence of a witness. Appellant failed to meet these requirements, but we have considered the question of whether an injustice resulted from the failure of the trial court to grant the motion for continuance and we cannot say that an injustice resulted therefrom. Under such circumstances we are prohibited by the provisions of Section 1520, Mississippi Code 1942 Annotated (1956) from reversing this case on this ground.
Appellant's assignment of error number two is that the trial court committed reversible error in overruling his motion to quash the indictment on the ground that Negroes were systematically excluded from the grand jury which indicted him. The only proof offered by appellant is that there were no Negroes on the venire from which the grand jury was selected that returned the indictment against him. The record does not reveal whether there were any Negroes upon the special venire from which the jury was selected to try this case, but we presume there were, since no complaint is made. Appellant made no effort to show that there had been long continued practice of omission of Negroes from jury service in this county. The fact that no Negro was included on a particular venire is not enough to establish that there was actual discrimination. Especially is this true in this case where the state offered evidence to show that there was no actual discrimination practiced. Kennard v. State, 242 Miss. 691, 128 So.2d 572 (1961).
We find that the appellant failed to establish that he was denied due process and equal protection of the laws by reason of Negroes being systematically excluded from the venire which indicted him.
We find no merit in appellant's next assignment of error which is that the court was in error in refusing to grant four instructions requested by appellant. The trial judge wrote on each instruction that was refused the reason why it was refused, and we find that each instruction was correctly refused for the reason given.
Appellant also assigns as error the action of the trial court in overruling his objection to the admission in evidence of *457 four photographs showing the body of the deceased. The record reflects that the photographs were made at the instance of the sheriff during his investigation on the night of the shooting. They show the location of the body, the blood stains, and reflect the location of the wound. Appellant urges that these photographs had no evidentiary value and were of such gruesome nature that they served no useful purpose other than to inflame the jury. We said in May v. State, 199 So.2d 635 (Miss. 1967) that:
As a general rule, the fact that a photograph of deceased in a homicide case might arouse the emotions of jurors does not of itself render it incompetent in evidence so long as introduction of the photograph serves some legitimate, evidentiary purpose. Slyter v. State, 246 Miss. 402, 149 So.2d 489, 150 So.2d 528 (1963); Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961); Price v. State, 54 So.2d 667 (Miss. 1951); Hancock v. State, 209 Miss. 523, 47 So.2d 833 (1950).
On the other hand, the introduction of gruesome photographs which have no useful evidentiary purpose, and which only arouse the passion and prejudice of the jury, should not be permitted to go to the jury. It is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate, evidentiary purpose. Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953); 20 Am.Jur. Evidence §§ 728, 729, 730 (1939); 23 C.J.S. Criminal Law § 852(1) c, at p. 352 (1961); Annot. 159 A.L.R. 1413 (1945). (199 So.2d at 640).
The trial judge determined that the photographs had evidentiary value and admitted them in evidence. We certainly cannot say that he abused his discretion in so doing.
Appellant also assigns as error the refusal of the trial court to allow Mrs. D.B. Mallory to testify on behalf of the appellant. The rule was invoked and this witness was in the courtroom while her husband testified in the case. Outside of the hearing of the jury the trial court conducted a hearing and determined that the witness had violated the rule and also held that the facts which she proposed to testify were immaterial. The gist of her testimony was that after the shooting and at a time when appellant was in jail he showed her a scar on his neck. When asked what was the appearance of the scar, she said, "Well, it was a short scar, and really, I was about three feet from him so I didn't look at it close, but there was a fresh scar." The question of whether the court will permit a witness to testify who has violated the rule excluding witnesses is in the court's sound discretion. However, it should be pointed out that the wiser and more just rule to follow is not to exclude the testimony altogether but to admit it with such remarks by the court as may be appropriate. Especially is this true in criminal cases. In the present case we cannot say that the trial court abused its discretion in refusing to allow this witness to testify. The testimony proposed to be given by this witness was cumulative. Mrs. Russell Ship testified on behalf of the defendant to practically the same facts to which this witness proposed to testify. Humphreys v. State, 217 Miss. 909, 65 So.2d 226 (1953).
The next assignment of error is that the trial court erred in refusing to grant a mistrial because of unfair and prejudicial statements made by the special prosecuting attorney in his closing argument to the jury. The argument was not recorded and a special bill of exceptions was not perfected and the only thing we have properly before us is what the trial court stated in the record. After the jury had retired to consider its verdict the court *458 dictated into the record the following statement:
Early in Mr. Yancy's argument, he mentioned that this Defendant came in drunk and Mr. Crocker did not interpose an objection before the jury but came to the bench and moved for a mistrial. There was evidence in the record that this man was drinking by one witness that I recall, sometime earlier in the night, so the Motion for a Mistrial is overruled.
Later in Mr. Yancy's argument, he referred to Sharon Hamilton by name in his argument, and Mr. Crocker moved for a mistrial on that, and let the record show that one of the jurors is H.S. Hamilton sitting on the case. I can't recall the exact language Mr. Yancy used in his reference to Mr. Hamilton, and neither side requested that the argument be taken, so, the Court will overrule the Motion for a Mistrial.
It is noted that counsel for appellant did not object to the argument of the prosecuting attorney, but only approached the bench where he made a request for a mistrial. In Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964), we said in this regard:
We also think there was no error in the action of the trial judge in overruling the appellant's motion for a mistrial on the ground that the statement of the district attorney to the jury in his closing argument in reference to John F. Kennedy and Ross R. Barnett represented an attempt to prejudice the jury by reason of recent unfortunate events that had occurred in the State and had received statewide publicity. The record shows that the defendant's attorney failed to object to the statement made by the district attorney at the time the statement was made, and no bill of exceptions was taken to show the exact nature of the remarks complained of. Even though the remarks complained of may have been improper, this Court has repeatedly held that the only way to preserve the right to have such matter reviewed on appeal is by objection at the proper time and moving for a mistrial, in the event the court fails to take such action as may be necessary to neutralize the effect of such improper argument. The record in this case shows that the remarks complained of were not called to the attention of the trial judge until after the jury retired to consider its verdict, and in our opinion the motion of the defendant for a mistrial was properly overruled. (250 Miss. at 693, 168 So.2d at 127.)
Insofar as the statement of the prosecuting attorney relative to appellant being drunk is concerned the trial court correctly stated that there was evidence that the appellant had been drinking beer. Although there was very weak evidence to support this inference, jurors are well aware that attorneys in arguing their cases are prone to overstate their cases and to draw unsound conclusions. Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949); Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956).
The foregoing statement of the trial judge reveals that the prosecuting attorney did refer to one of the jurors by name but we do not have properly before us the full context of his statement. Counsel for appellant does include in his brief filed in this Court his affidavit in which he sets up his reasons for not presenting to the trial court a special bill of exception and what he alleges that the prosecuting attorney actually said. We cannot consider the ex parte affidavit as a part of the record. This is especially true in this case because when the motion for a new trial was heard the court gave appellant an opportunity to put on proof to support his motion. Appellant elected at that time to stand on what the record reflected as to the statements of the prosecuting attorney. He did state that he was going to present a bill of exceptions later but did not do so.
While in this case we cannot say that the trial court was in error in overruling *459 appellant's motion for a mistrial, or in overruling his motion for a new trial, because of improper argument, we must point out that we think that the practice of counsel in jury arguments in addressing individual jurors by name or making any remarks suggestive of intimate or friendly relationships between counsel and jurors is improper and should be scrupulously avoided. Any attempt to curry favor with members of the jury is unprofessional conduct. Section 23 of the Rules of Professional Conduct of the Mississippi State Bar states:
23. Attitude toward jury.
All attempts to curry favor with the juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing. A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause.
88 C.J.S. Trial § 169, at p. 338 (1955) states the rule as follows:
It is improper for counsel to make remarks suggestive of friendly relations with a member of the jury, or to single out a particular juror and personally appeal to him, or to support his arguments by side questions to his client, or to reiterate an argument held improper by the court.
After a careful review of the record in this case, we find that there is ample evidence to support the jury verdict of guilty of manslaughter and there is no reversible error in the record.
For the reasons stated, this case is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and ROBERTSON, JJ., concur.