292 So.2d 159 (1974)
James G. GRIFFIN, Jr.
v.
STATE of Mississippi.
No. 47721.
Supreme Court of Mississippi.
March 25, 1974.
*160 Michael D. Jonas, Aberdeen, for appellant.
A.F. Summer, Atty. Gen. by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant James G. Griffin, Jr. and his brothers, Johnny Frank Griffin and David Griffin, were jointly indicted in the Circuit Court of Monroe County for the crime of murder in the killing of Sallie Loreen Barker. Appellant was granted a severance and on trial was convicted. He was sentenced to life imprisonment in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
The proof on behalf of the state established that at about 10 p.m. on July 14, 1972, appellant and his brothers forcibly seized Sallie Loreen Barker and forced her into the 1971 black and white Buick automobile. While she was screaming and hollering, they drove away from the scene. On the following morning, the body of Sallie Loreen Barker was discovered in a ditch alongside a county road in the Darracott Community of Monroe County. She was nude, and her clothes were not found at the scene. An autopsy was performed, and the pathologist testified that Sallie Loreen Barker died as a result of a hemorrhage over the brain caused by multiple injuries to the head, scalp, face and the base of the skull and neck. It was his opinion that the injuries were inflicted by a long, wide or round object. The pathologist also testified that he found numerous sperm cells in the victim's vagina indicating sexual intercourse had occurred within 48 hours of her death.
The sheriff's office put out an item on the Griffin brothers, and appellant and his brother Johnny Frank Griffin were arrested in Utah in July 21, 1972. They were subsequently returned to Monroe County to face a charge of murder.
Both appellant and Johnny Frank Griffin testified at the trial. Johnny Frank testified that he and his two brothers had been drinking and riding around Aberdeen all day. At the time they saw Sallie Loreen Barker, he was driving. James remarked that he knew her and directed him to slow down so he could talk with her. James then asked her to come and go with them. She agreed and willingly got into the car. He testified that they then drove to a point near Daniel Baptist Church where his brother David got out of the car. Johnny Frank said that he had been drinking and driving all day and was tired. He told his brother, the appellant, to drive the car. He then got in the back seat, and James and Sallie Loreen got in the front seat. They drove away, and in a short time, he went to sleep. He said that he did not wake up until about sunup the next day, and at that time, he and his brother were in Memphis, Tennessee. They left Memphis and drove to San Francisco, California, and then back to Utah where they were arrested. He said the first time he knew that Sallie Loreen Barker was dead was when he was arrested in Utah, and his brother never told him what had happened.
Appellant testified on his own behalf. He stated that he knew Sallie Loreen Barker and when he saw her, he had Johnny slow down so he could talk with her as she was walking down the street. His version as to what happened is as follows:
And so she said she really had to go around to her sister's house. I said, "Well, come on go with me." And she said that  "Okay," and during this time I had pulled up to Evergreen  Johnny had pulled up to Evergreen, and he stopped, went on across the street and when he got across the street, he stopped and she stopped. And we were doing a whole lot of laughing and hollering and all that stuff.
And so she gets in the car. She said, "Wow, ya'll must have had a lots to drink." And I said, "We have." And so she got up in front with Johnny and I was in the back, me and David.

*161 So he drives on to  to Daniel Baptist and my brother said, David said, "Well, I'm going to get out because I'm too high. Ya'll likely to get stopped and put in jail. I'm going to get out and go to my old man's crib." So, he gets out. Johnny said, "Well, I'm too high to drive. You drive." I said "Okay," so, I get up front. He gets in the back.
So we was going on down old 25. And so we gets to the intersection, the turn on this gravel road, and that's where I turn off at. And so I was driving and got on the other side of Tobbs (phonetically), that means you can go back to Darracott or either go straight. So I goes on straight and gets to this intersection that goes toward Artan (phonetically).
I told her, "I changed my mind about going to the truck stop, because I'M ready to leave here. I don't like this place any more. I'm ready to leave it." She said, "Where are you going?" I said, "I ain't got no destination." She said, "Wow, I wish I could leave." I said, "Well, I'm fixing to get ready to leave." I said, "And I'm going to take you back to where you was going." She said, "I was going over to my sister's house, but you mean you're not going to take me to the truck stop now. You make me miss my date." I said, "Well, I'm  I'm  I'm  not going to take you to no truck stop 'cause I'm ready to leave." She said, "Well, you make me miss my date around my sister's house. I said, "Well, I'm  I'm  I'm not going to go to no truck stop."
And so she said, "Well, okay." She reached in her pocketbook and got a long knife out and when she opened it, I stopped the car and jumped out. And so she started around and I pulled the jack handle out and I told her to get back. So, she started coming and that's when I struck her.
James admitted striking Sallie Loreen several times with the jack handle, but he denied having sexual intercourse with her, or that he left her nude. He did not know exactly where he left Sallie Loreen, but he stated that it was somewhere down that "Darracott road." He testified that he took the knife with which she had attacked him away from the scene and threw it away in Memphis. He further testified that his brother Johnny Frank was asleep on the back seat of the car when the fight occurred, he remained asleep until they reached Memphis, and he (appellant) never told his brother what happened.
Appellant assigns as error several grounds for reversal of this case. We will only discuss those that, in our opinion, merit discussion.
Appellant first urges that the trial court was in error in overruling his motion for a change of venue. The basis of his motion for a change of venue was that local prejudice was such that he could not get an impartial jury in Monroe County. In support of his motion, appellant introduced two newspaper articles published in local newspapers and two witnesses who testified that the general concensus among the members of the black community in Aberdeen was that the appellant was guilty. The state introduced four witnesses who testified that in their opinion, appellant could get a fair and impartial trial in Monroe County. These witnesses were regularly in contact with the broad spectrum of the populace of the county, and they were not aware of any prejudice against the appellant.
Appellant argues that because of the prejudice and feeling in the black community, he was forced to exclude all blacks from the jury and this amounted to a forced systematic exclusion of blacks from the jury. The record does not reflect the racial composition of the jury that tried the case, neither does it reflect whether appellant was forced to exhaust his peremptory challenges. In any event the trial court in overruling the motion stated:
The evidence presented by the defendant in this case appears to the Court to *162 be confined to a very small portion of the overall areas from which the jury will be drawn.
Defense counsel argues that he would be denied the right to have blacks on the jury that would try these defendants because he feels he must exclude blacks which prejudged this case or inflamed about it.
However, the only testimony showing that any blacks are anyway inflamed or that they have prejudged these defendants are confined to the two witnesses, Roger Cooperwood and L.C. Cook both of whom reside and work and obtain their information in the City of Aberdeen.
Therefore, it's hard for this Court to believe that counsel will have to exclude blacks from all over the county, and they will be drawn from all over the county. The jury lists are prepared from the voter's registration records. There is no systematic inclusion or exclusion of blacks or whites. So, counsel, you are really in the same position as a black or white defendant would be. Perhaps you may have to use your twelve challenges which the law gives you to exclude the particular segment of the black community in Aberdeen that's incensed about this, but without getting to the twelve peremptory challenges, you also have the right to challenge them for cause after developing on the voir dire that they are biased or prejudiced against these defendants.
I'm certain that whoever presides in the trial of the case, once you have made a satisfactory showing there will exclude those jurors, but as a safety measure, you have some twelve peremptory challenges which you may exhaust.
The court finds from the evidence beyond a reasonable doubt that the defendants have failed to show that they will be discriminated against and unable to obtain a fair trial in Monroe County. Therefore, the motion for change of venue is hereby overruled.
It is well settled that the decision to grant a change of venue lies in the sound discretion of the trial judge. Reversal lies only on the abuse of that discretion and there is nothing in this record to indicate that the trial judge abused his discretion in overruling the motion. Parks v. State, 267 So.2d 302 (Miss. 1972); Slyter v. State, 246 Miss. 402, 149 So.2d 489 (1963).
Appellant assigns as error the admission in evidence of a photograph of the nude body of the deceased. After the body of the deceased was found, the investigating officer took a picture of the body at the place where it was found. It reflected that the deceased had been beaten and that there was what appeared to be dried blood on her body. Appellant testified that when he beat the deceased, she was fully clothed. The trial judge in overruling the objection out of the presence of the jury stated:
The defendant, of course, testified that when he left the deceased woman, after he had struck her several times with a tire tool, that she was fully clothed. The photograph does show that she was removed from the roadway and was in a ditch, away from the road, in a nude condition.
It further shows some marks on her breast area that could be an indication that she was struck after her clothes were removed. The picture is in black and white and it does not appear to the Court to be something that would be particularly inflammatory to the jury; and the court is of the opinion that its probative value would out weigh any such influence that it might have on the jury, and the objection is overruled.
It is apparent from the foregoing statement that the trial judge gave careful consideration to this question in the light of the decisions of this Court and after an examination of the photograph and the testimony *163 elicited, we cannot say he was in error in admitting the photograph in evidence. May v. State, 199 So.2d 635 (Miss. 1967).
Appellant also assigns as error the overruling of his objection to the argument of the county attorney relative to appellant's previous convictions. The trial judge correctly ruled that the prosecuting attorney could argue the previous convictions as shown by the evidence with respect impeachment of appellant's testimony. Our examination of the record reveals that the remarks of the prosecuting attorney were within the proper bounds. However, we deem it proper to point out that an accused's previous convictions are admitted only for the purpose of showing his credibility as a witness and any reference thereto by the prosecution in arguments should be confined to that purpose.
Appellant also contends that the district attorney made an improper argument relative to the fact that the appellant elected prior to trial to remain silent when questioned by the officers and did not tell his version of the incident until he testified in court. Appellant did not object to the testimony in this regard and made no contemporaneous objection to this part of the argument. No objection was called to the attention of the trial court until after the jury verdict and a motion for a new trial were made. We have said in numerous cases that even though the remarks complained of may have been improper, the only way to preserve the right to have the matter reviewed on appeal is by objection at the time the improper remarks are made and moving for a mistrial in the event the court fails to take such action as may be necessary to neutralize the effect of such improper arguments. It is only when the argument is so inflammatory as to require the entry of the trial judge of his motion that we will review the argument in the absence of objections. Ford v. State, 227 So.2d 454 (Miss. 1969); Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964).
Finally, appellant urges that the trial court was in error in failing to apply the Weathersby rule and grant his request for a peremptory instruction. We find no merit in this contention. We have had the occasion heretofore to point out that it is a rare case that meets the requirements of the Weathersby rule. The rule is where the defendant or the defendant's witnesses are the only eye witnesses to a homicide, their version, if reasonable must be accepted as true, unless substantially contradicted by a credible witness or witnesses for the state or by the physical facts or by facts of common knowledge. Appellant admits striking the deceased several times with a tire tool, his justification was that the deceased was advancing on him with a knife. He never explained why it was necessary for him to beat her to death in order to protect himself. Therefore, under his own version, it was a jury question as to whether he used unreasonable force or excessive force to protect himself. Appellant admits that his testimony and that of the state is in conflict as to whether the deceased was abducted and whether or not appellant left the body of the deceased unclothed. Appellant denied that he dragged the body of the deceased from the road into the ditch. But the body was found in the ditch, and there were signs indicating that the body had been dragged from the road into the ditch. These contradictions together with the fact that the appellant immediately fled and never reported the incident to the officers or anyone else were certainly sufficient to take this case out of the purview of the Weathersby rule. McElwee v. State, 255 So.2d 669 (Miss. 1971); Ross v. State, 234 Miss. 309, 106 So.2d 56 (1958).
After a careful consideration of the errors assigned, we find no reversible error. The evidence is ample to support the verdict of the jury. Therefore, this case must be and is affirmed.
Affirmed.
RODGERS, P.J., and SMITH, ROBERTSON and BROOM, JJ., concur.