COBURN v. STATE

No. 43014          October 19, 1964          168 So. 2d 123

*John Kennedy,* Holly Springs, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Kyle, P. J.

Annie Retha (Reece) Coburn was indicted, tried and convicted at the March 1963 Term of the Circuit Court of the Second Judicial District of Tallahatchie County, on a charge of murder in the killing of Ethel May Allen, and was sentenced to imprisonment in the state penitentiary for the term of her natural life. From that judgment she has prosecuted this appeal.

The killing occurred on the night of December 25, 1962, at the front door of Earl Cox's Cafe in the Town of Sumner. According to the testimony of the State's witnesses the deceased, Ethel May Allen, was coming out of the front door of the building when the appellant ran up and "hit" her. Almost immediately Ethel May began to slump to the pavement and was heard to say that she had been cut. The appellant fled from the scene of the accident, and the weapon used in inflicting the injury was not produced in evidence during the trial, nor is there any direct testimony from any eyewitnesses as to what it was. After the stabbing, Ethel May was placed in an ambulance and taken to the hospital at Charleston. She died enroute to the hospital and was pronounced dead on arrival by Dr. A. W. Hulett, staff physician on duty at the hospital. Dr. Hulett testified that she had been stabbed in the chest, the wound being made "* * * either * * * with an icepick or a very thin knife."

The appellant's attorney has assigned and argued five points as ground for reversal of the judgment of the lower court: (1) That the court erred in allowing the State to reopen its case after the State had rested for the purpose of putting on new evidence in chief; (2) that the State failed to prove the cause of death of the deceased; (3) that the court erred in overruling the appellant's motion for a mistrial on the ground that the State's attorney, in his closing argument to the jury, had made numerous references to John F. Kennedy

and Ex-Governor Ross R. Barnett for the sole purpose of attempting to prejudice the jury by reason of recent unfortunate events that had occurred in the State; (4) that the verdict of the jury was contrary to the overwhelming weight of the evidence; and (5) that the court erred in refusing to grant four instructions requested by the appellant and numbered 11, 12, 13 and 15.

In view of the nature of the points assigned and argued as ground for reversal of the judgment of the lower court it is necessary that we give a brief summary of the testimony.

Eight witnesses testified for the State. No witnesses were called to testify on behalf of the defendant.

Hazel Slaughter testified that she was present at Earl Cox's Cafe on Christmas night at the time of the fatal encounter which resulted in the death of Ethel May Allen. Hazel stated that Ethel May was coming out of the front door of the cafe; that Henry Lee Harris was standing at the front door, and when Ethel May walked out he grabbed her and at that time his sister, Annie Retha Coburn, ran from across the street and "hit" her. Hazel stated that she did not know what Annie Retha hit Ethel May with; that she just saw her when she hit Ethel May; and when Ethel May was hit, "she weakened down — she went down on her knees in the street." Hazel stated that she and Ethel May came out of the cafe at the same time; that it was about 8:00 o'clock; that the lights were burning in front of Earl Cox's place; that she did not see Ethel May do anything to provoke the attack; that Ethel May had nothing in her hand at the time she was hit. Hazel stated that Annie Retha hit Ethel May once and then ran toward the post office; that she saw nothing in Annie Retha's hand; that she did not see anyone else hit Ethel May that night.

Ada May Bland testified that she saw Ethel May at Earl Cox's Cafe that night, that she was seated on the inside of the cafe near the front. Ada May stated that

she left Earl Cox's place and then came back, and as she approached the front entrance to the building she saw Ethel May coming out the door; that she was not very far from Ethel May when she saw Annie Retha Coburn hit Ethel May one time as Ethel May was coming out the door. Ethel May was hit somewhere around the neck. When Ethel May was hit, "she didn't do anything but stand there and say, 'I am cut', and then she fell down." Annie Retha then ran across the street. Ada May stated that she could not tell what Annie Retha had in her hand; that whatever it was she held it real tight. Ada May stated that she remained at the scene of the stabbing until they put Ethel May in the car and carried her to the hospital. There were a lot of people around there, but she could not tell who they were. On cross-examination Ada May stated that she was about 12 or 15 feet from Ethel May when she saw her coming out of the cafe. She did not see anything in Ethel May's hand. She did not know what Annie Retha Coburn hit Ethel May with. She did not see anybody stab Ethel May except Coburn.

Earl Cox testified that he lived at Sumner and ran a business in Sumner; that he drove a truck, worked with farmers, and engaged in many activities. His "business" was located on a back street commonly known as "Beale Street." He was asked to describe what, if anything, unusual happened at his place that night. His answer was that Henry Lee Harris, who was Annie Retha Coburn's brother, and his two girl friends were in the cafe, and Henry Lee's sister and brother came there after him and he wouldn't go; that Henry Lee's wife and "this other girl" got into an argument; that after they got into an argument he sent for the night man to put them out. Earl was asked who was involved in the fight or the scrap that transpired there. His answer was just those three, Henry Lee Harris, Cora Lee Bland and Henry Lee's wife, "the

one he is with now.'' Earl stated that, when the fracas started he told them they had to get out, and he got them out. He was asked what he saw Ethel May Allen do. His answer was that Ethel May was in the cafe, but she was not involved in the argument, and ''she didn't do anything in my place.'' Earl stated that after he got to the door he saw Henry Lee Harris and Ethel May Allen facing one another. He did not see Ethel May with any weapon. He did not see Annie Retha Coburn with a weapon — he never did see her that good. She had something in her hand, but he couldn't tell what it was. He did not see either one of them strike the other. On cross-examination Earl stated that Ethel May came up with a bottle after she was stabbed; that she did not have a bottle in her hand before she was stabbed, and he did not see her throwing any bottles.

Dr. A. W. Hulett testified he was on the staff of the Tallahatchie General Hospital at Charleston. He was on duty the night that Ethel May Allen was brought to the hospital emergency room. She was dead on arrival. She had been dead probably ten or fifteen minutes. There was a stab wound in the upper part of her chest. It was right above the breastbone. The incision was about one-eighth of an inch long. It was either made with an icepick or a very thin knife. There was about an ounce of blood on her dress right at the site of the injury. The amount of blood was a very small amount to produce death.

At this point the State rested.

The court called for a short recess and the jury retired to the jury room. While the jury was out the district attorney moved the court to allow the State to reopen its case for the purpose of calling two other witnesses. The court stated that nothing had intervened since the State announced it rested, and since nothing had happened the court would permit the State to reopen the case. The defendant's attorney objected. The

court overruled the objection. The jury returned to the courtroom.

Nellie Givence testified that she was working at Joe Busby's Cafe Christmas night; that Joe's place was next door to Earl Cox's place — the next store; that she walked into Earl Cox's place, and leaned over on the table and told Ethel May to wait for her until she got off from work because she was going home with her; that she then stepped down to the next place, and when she came back Ethel May was coming out the door and fell against her; that she asked Ethel May what was the matter, and Ethel May told her, "a woman in here cut me." Nellie stated that people began to gather around Ethel May and caught her as she was falling, and after she fell her brother picked her up and held her until Joe Busby got an automobile to carry her to the hospital.

Joe Busby testified that he lived on Back Street in the Town of Sumner; that he operated a place of business next door to Earl Cox's place; that Nellie Givence worked for him, and was working for him on December 25. Joe stated that he knew Ethel May Allen during her lifetime, and he took her to the hospital at Charleston after she was cut; that Nellie Givence and another girl who was called "Sweet Thing", and Cleveland Crawford went along with him. When they got to the hospital the doctor told him that Ethel May was dead — that she had been dead several minutes. Cleveland Crawford testified that Ethel May Allen was his sister. He saw her on Christmas night at Earl Cox's place as she was coming out of Earl's door. She was outside about two or three steps, and was falling when he saw her. One or two people laid her in his lap until the car came, and Joe Busby carried her to the hospital. Cleveland stated that Ethel May died in his arms before they arrived at the hospital. He observed her breathing

the last time when they were about a mile and a half east of the Tallahatchie River Bridge.

Champ Jackson testified he worked at the Tutwiler Funeral Home and assisted in preparing Ethel May's body for burial. He was asked what marks they found on the body. His answer was, "It looked like it might have been a keen pointed knife or something like that, that was the only wound on the body. It was kinda small." The witness stated that he could not tell what the depth of the wound was, that there was not much blood on her clothes.

██ █ We think there is no merit in the appellant's contention that the trial judge erred in permitting the State to reopen its case after the State had rested for the purpose of putting on additional evidence. This Court has held in numerous cases that the matter of allowing either the State or the defense to reopen a case after it has rested is a matter addressed to the sound discretion of the trial court. Richardson v. State, 153 Miss. 654, 121 So. 284; Roney v. State, 167 Miss. 827, 150 So. 774; Perkins v. State, 229 Miss. 299, 90 So. 2d 650; Riley v. State, 248 Miss. 177, 157 So. 2d 381.

██ █ As the trial judge stated, in ruling on the appellant's motion, nothing whatever had intervened between the time the district attorney announced that the State rested and the time that he asked for permission to reopen and introduce further testimony. There was no abuse of the court's discretion in permitting the State to reopen the case for the purpose of introducing additional testimony under the facts stated.

██ █ We also think there was sufficient proof in the record to support the jury's finding that the cause of death was a stab wound inflicted by the appellant when she "hit" the deceased, and fled from the scene of the cutting. The testimony shows that death ensued within a very short time after the deceased had been "hit" by the appellant; and the evidence would support

no other logical conclusion than that death resulted from the stabbing of the deceased by the appellant with a very thin knife or other sharp instrument. ██ ██ This Court has held that the cause of death, even in the absence of medical testimony, may be proved by circumstances. Watts v. State, 210 Miss. 236, 49 So. 2d 240; Moore v. State, 238 Miss. 103, 117 So. 2d 469.

██ ██ We also think there was no error in the action of the trial judge in overruling the appellant's motion for a mistrial on the ground that the statement of the district attorney to the jury in his closing argument in reference to John F. Kennedy and Ross R. Barnett represented an attempt to prejudice the jury by reason of recent unfortunate events that had occurred in the State and had received statewide publicity. ██ ██ The record shows that the defendant's attorney failed to object to the statement made by the district attorney at the time the statement was made, and no bill of exceptions was taken to show the exact nature of the remarks complained of. Even though the remarks complained of may have been improper, this Court has repeatedly held that the only way to preserve the right to have such matter reviewed on appeal is by objection at the proper time and moving for a mistrial, in the event the court fails to take such action as may be necessary to neutralize the effect of such improper argument. The record in this case shows that the remarks complained of were not called to the attention of the trial judge until after the jury retired to consider its verdict, and in our opinion the motion of the defendant for a mistrial was properly overruled.

██ ██ It is next argued that the verdict of the jury is contrary to the overwhelming weight of the evidence. But we think there was ample evidence in the record to support the jury's finding that the appellant was guilty of the crime charged against her in the indictment.

■ ■ Finally, it is argued that the court erred in refusing to grant four instructions requested by the appellant and numbered 11, 12, 13 and 15. We have carefully examined each of these instructions, and we think there was no error in the court's refusal to grant the four instructions. There is no proof in the record to indicate that the defendant had reasonable grounds to apprehend a design on the part of Ethel May Allen to do her some great personal injury, or that there was danger of such design being accomplished. There is no proof in the record to show that Ethel May Allen made any move or committed any overt act indicating a design to take the life of the defendant or to do her any bodily harm. The record in the case shows that the State obtained an instruction correctly defining the crime of murder, and that the court granted to the defendant ten instructions which presented fully the law as applied to the facts in the case.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

*Ethridge, Gillespie, McElroy and Brady, JJ.*, concur.