646 So.2d 538 (1994)
Gary Paul SMITH
v.
STATE of Mississippi.
No. 92-KA-00813.
Supreme Court of Mississippi.
December 1, 1994.
*539 Rex K. Jones, Hattiesburg, for appellant.
Michael C. Moore, Atty. Gen. and DeWitt T. Allred, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
This case involves one Gary P. Smith, who, under cover of darkness, participated in what citizens concerned about wildlife conservation consider absolutely detestable, a "headlighter." Headlighters most often are those individuals who jeopardize the safety of wildlife conservation law enforcement officers in the line of duty afield.
The headlighter, like a thief in the night, would shoot deer by blinding them with a powerful spotlight, rather than face this magnificent creature on its home range, during legal hours, using legal means; even if it means waiting for hours, rain, shine, sleet or snow; and even if it means only enjoying the view provided by nature, and not necessarily the harvesting of game. It matters not to the headlighter whether he shoots a buck, doe or fawn. What does it matter that it's dark and the headlighter cannot see too well or that he might be shooting from a public road. It would be too bad if he hit something else, like a farmer's livestock, another vehicle, or worse yet, a human being.
Gary Paul Smith and his brother, Dale, were arrested on November 27, 1991, by Officer Jim Carver of the Department of Wildlife, Fisheries and Parks. Smith was charged with headlighting deer, hunting on a public road, and hunting from a motorized vehicle, all in violation of the hunting and game laws of the State of Mississippi.
Smith was convicted on January 28, 1992, in the Justice Court of Pearl River County, Mississippi, on all three charges. Smith appealed his conviction to the Pearl River County Circuit Court for a trial de novo, and on June 18, 1992, a jury convicted Smith on all charges. Smith was sentenced to fifteen days in jail and a $1,000.00 fine for headlighting *540 deer; six months in jail and a $500.00 fine for hunting from a public road; and a $100.00 fine for hunting from a motorized vehicle.
Smith, aggrieved by his conviction, appeals to this Court and raises the following issues on appeal:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO SUSTAIN THE APPELLANT'S MOTION FOR A DIRECTED VERDICT FOR FAILURE OF THE STATE TO PROVE VENUE

II. THE VERDICT OF THE JURY (WAS) AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AS TO THE CRIME OF HUNTING FROM A PUBLIC ROAD

Only issue I of Smith's claims warrants discussion. The evidence against Smith was more than sufficient to support the jury's verdict. The State proved venue on rebuttal and Smith failed to counter the evidence in surrebuttal. After a complete review of the parties' briefs and the record in this case, we find no merit to Smith's claims and must affirm the trial court.

FACTS
Officer Carver testified at Smith's trial identifying Smith as one of two brothers that he arrested on the night of November 27, 1991. Carver testified that he observed a vehicle pull off Sones Chapel Road at Amacker cemetery and cut its headlights off. Carver then testified that the car pulled back onto Sones Chapel Road with its headlights shining over a rye field. He also observed a bright light, coming from the passenger side of the car, scanning the rye field. After shining the spotlight on the field, the Smiths left the area and headed towards State Highway 26. Carver radioed for backup, dropped back a distance, and followed the car.
Officer Carver pulled the Smiths over at the intersection of Sones Chapel Road and Highway 26. Carver approached the passenger's side of the car and observed Gary Paul Smith trying to open the bolt and eject two shells from a .243 caliber rifle. Officer Carver took the gun from Smith, examined it, and found two shells in the clip. Officer Carver also observed a quartz spotlight plugged into the cigarette lighter on the passenger's side of the car. Officer Carver testified that Smith stated: "[Y]ou caught us red-handed." "We're not going to try to deny anything. You caught us fair and square."
Throughout Officer Carver's entire testimony, he never stated that he arrested Smith in Pearl River County, Mississippi, or that the crime took place in Pearl River County, Mississippi.
Troy Stockstill, the State's next witness, testified that he was the county road manager and that he maintained the county roads throughout the district and that he was familiar with Sones Chapel Road. Stockstill stated that Sones Chapel Road was a public road and that it was maintained by public funds. However, Stockstill did not testify that he was the county road manager for Pearl River County, Mississippi, or that Sones Chapel Road was in Pearl River County, Mississippi.
After the State rested, Smith moved the court to peremptorily instruct the jury to find him not guilty and sought the court's dismissal of the charges for failure of the State to prove venue. The judge overruled Smith's motions finding that he did not think that the State had proved venue, but that he would let the record speak for itself. Smith's attorney informed the court that he would proceed with his case but that he did not want to waive the question of the State's failure to prove venue. The trial judge incorrectly ruled that Smith was proceeding with his case, but that he was not waiving the issue of venue.
Smith testified that he and his brother Dale were traveling from Dale's house at Carriere to his house along Sones Chapel Road on the night of November 27, 1991, and pulled into Amacker cemetery to use the restroom. Smith testified that neither he nor his brother shined a headlight or any kind of light across any rye field on Sones Chapel Road.
*541 The defense next called Gary Smith's brother Dale to the stand. Dale Smith's testimony was for all practical purposes identical to that of his brother. Dale Smith denied that he or his brother spotlighted the rye field across from Amacker cemetery. Dale Smith testified that he was using his sister's Thunderbird and that he kept the spotlight in the car because the car had vacuum headlights and the lights sometime leaked down and he would have to get under the hood with the spotlight to repair the headlights. Dale Smith testified that he kept the rifle in the car for his own protection.
At the close of his case, Smith renewed his motion for a peremptory instruction of not guilty and again sought dismissal because of the state's failure to prove venue. The motion was denied.
The State called Officer Carver as a rebuttal witness. The officer was called to the stand to rebut testimony that he, Carver, could not have observed the Smith's car from where he was parked. On rebuttal Officer Carver testified that the whole incident took place in Pearl River County, Mississippi. The State rested and the defense did not call any further witnesses.
The jury was instructed as to the law and was excused to begin its deliberations. After completing its deliberations, the jury found Smith guilty of all three charges.

DISCUSSION
Smith claims the State failed to prove venue in Pearl River County and that the court erred in its failure to grant his motion for a directed verdict.
The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. Jones v. State, 606 So.2d 1051 (Miss. 1992). Smith attacks the sufficiency of the proof of venue and argues that the State failed to prove that the alleged crimes took place in Pearl River County, Mississippi.
The State called two witnesses during their case-in-chief, Carver and Stockstill. Neither of them testified that the crime occurred in Pearl River County. Stockstill, the county road manager, testified that Sones Chapel Road was a public road and that it was maintained by county funds. However, he did not testify that he was the county road manager for Pearl River County, Mississippi, or that Sones Chapel Road was located in Pearl River County, Mississippi.
Proof of venue is indispensable to a criminal trial and it may be proved by direct or circumstantial evidence. Jones v. State, 606 So.2d 1051, 1055 (Miss. 1992); Griffin v. State, 381 So.2d 155, 158 (Miss. 1980); Jackson v. State, 246 So.2d 553, 555 (Miss. 1971). In this case, none of the witnesses testified during the State's case-in-chief that the crimes took place in Pearl River County, Mississippi.
The only place in the record during the State's case-in-chief where testimony was elicited concerning the county of proper venue occurred on cross-examination of Officer Carver, who was asked:
Q. Okay. Of course, there's nothing unusual about people in Pearl River County or any other Country [sic] carrying rifles in their vehicles; is it?
A. Nothing so unusual about it.
This question by Smith's attorney appears to have been an attempt to establish that it was commonplace in Pearl River County for people to carry loaded rifles in their car. It is certainly logical that the jury could have inferred that the entire incident occurred in and that Gary was arrested in Pearl River County, Mississippi, or alternatively, the jury could have found that it was common practice for people to carry guns in their cars in Pearl River County and not necessarily be guilty of headlighting and hunting from a public road in a motorized vehicle. Sanders v. State, 286 So.2d 825, 827 (Miss. 1973).
Additionally, the jury heard from Troy Stockstill, the county road manager of Pearl River County, who testified that Sones Chapel Road was a public road maintained by county funds. The jury, composed of Pearl River County residents, could have possibly inferred that venue was established in Pearl River County, considering Stockstill's testimony, coupled with Officer Carver's testimony that the incident occurred on Sones Chapel *542 Road. Although this is a close question indeed, we find that there was insufficient evidence for establishing venue in the State's case-in-chief.
Smith moved for a directed verdict or peremptory instruction at the end of the State's case-in-chief. In considering a motion for a directed verdict, this Court on review must consider the evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. Barnwell v. State, 567 So.2d 215, 217 (Miss. 1990); Davis v. State, 530 So.2d 694, 703 (Miss. 1988); Thompson v. State, 457 So.2d 953, 955 (Miss. 1984). Conversely, if there is insufficient evidence to support a guilty verdict, the motion for directed verdict must be sustained.
The standard of review used in determining the sufficiency of the evidence after the denial of a directed verdict motion or motion for a peremptory instruction is found in Wetz v. State, 503 So.2d 803 (Miss. 1987). In Wetz, the State challenged the defendant's ability to challenge the sufficiency of the evidence after the trial judge overruled the defendant's motion for a directed verdict. Id. at 807-08. This Court in an often quoted footnote stated:
[I]n his brief before the court, the Attorney General argues that we should not consider the propriety of the Circuit Court's denial of the motion for a directed verdict made at the end of the prosecution's evidence, on the premise that Wetz waived any rights he might have in that regard by offering evidence in his own behalf. We have, of course, stated this waiver rule on numerous occasions, generally without bothering to explain its limited procedural meaning. See, e.g., Weeks v. State, 493 So.2d 1280, 1282 (Miss. 1986); Ruffin v. State, 481 So.2d 312, 316 (Miss. 1986); (further citations omitted) Because the point is often misunderstood an explanation may be helpful.
By offering evidence of his own, the defendant in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict. What the waiver rule means is that the defendant must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state of the record which may have existed back when the motion for a directed verdict was originally made.
Put otherwise, all of these motions  the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or, finally, a motion for judgment of acquittal notwithstanding the verdict  are procedural vehicles for challenging the sufficiency of the case for the prosecution. Each requires that the court considers all of the evidence before it at the time the motion is considered. When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. Here, of course, that was when the Circuit Court overruled the motion for a new trial which contained at least two paragraphs challenging the legal sufficiency of the evidence. Cf. Clements v. Young, 481 So.2d 263, 268 (Miss. 1985). See also Griffin v. State, 495 So.2d 1352, 1353 (Miss. 1986).
Wetz, 503 So.2d at 807-08, n. 3. (emphasis added).
In the case sub judice, Smith moved for a directed verdict based upon the sufficiency of the evidence establishing venue. The trial judge denied Smith's motion and Smith put on evidence in his defense. Smith, at the end of his case, sought a peremptory instruction from the judge instructing the jury to find that the State had not established venue. Smith once again challenged the weight and sufficiency of the State's proof of venue in his motion for a JNOV, or in the alternative, for a new trial. Since each requires consideration based on the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the *543 circuit court. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Smith may appeal the alleged inadequacy of the State's evidence establishing venue, but he must do so based upon the entire record, not just on the State's case. Jordan v. State, 513 So.2d 574, 578 (Miss. 1987). See also Hall v. State, 546 So.2d 673 (Miss. 1989) (defendant challenged sufficiency of State's evidence establishing identity of defendant).
The State argues that the district attorney's oversight was corrected during the defendant's case or during the State's rebuttal case and therefore, venue was established. To support this argument the State points to the footnote found in Wetz v. State, 503 So.2d 803, 807 (Miss. 1987). On review, the State argues, we must look to the entire body of evidence before the trial court at the last time the sufficiency of the evidence was challenged. In the case sub judice, the last time the sufficiency of the evidence establishing venue was challenged was in Smith's Motion for a Judgment Notwithstanding the Verdict, or in the Alternative, A New Trial. Thus, the State argues, venue was conclusively established and Smith's conviction should be upheld. Again we find the claim made by Smith prior to rebuttal by the State to be a very close issue, but Smith should prevail at that point because of his reliance upon the erroneous ruling of the trial judge who allowed Smith to put on evidence in defense while supposedly not waiving his claim under the venue issue.
On rebuttal, however, the State called Officer Carver, who testified that the entire headlighting incident occurred in Pearl River County, Mississippi. Smith put on no evidence to the contrary. Clearly at this point, there can be no doubt that venue was being sufficiently proven to be in Pearl River County, Mississippi. This Court, when reviewing the sufficiency of the evidence, must review the entire record. Wetz; Jordan; Hall.
Because of this rebuttal testimony by the State, which went unchallenged due to the lack of surrebuttal by Smith, we find review of the entire record shows that the State proved venue conclusively in the case sub judice.
We liken rebuttal testimony that is unchallenged with no surrebuttal testimony by the opposite party as somewhat similar to a motion to reopen a case. This Court has a long line of precedent cases concerning rebuttal and motions to reopen a case.
In Roney v. State, 167 Miss. 827, 150 So. 774 (1933), the appellant contended that the children at issue were not his. After the State rested its case in chief and appellant had introduced his evidence in defense, the State was permitted to introduce a witness in rebuttal that the appellant admitted the children were his and not someone else's. The appellant argued the evidence should have been introduced by the State before it closed its case in chief. The Court held:
It is the general rule that the party with the burden of proof and the duty to open the case, must in his opening, and before he rests in his proof, introduce all the substantial evidence upon which he relies to establish his demand, and the extent of his demand. There is an exception to the rule, however.
The Court noted a more liberal rule as to admitting testimony in rebuttal, "although not strictly rebuttal in its nature, and this has been done even after the testimony has been closed on both sides." Roney, 167 Miss. at 831, 150 So. at 775.
The Court in Riley v. State, 248 Miss 177, 186, 157 So.2d 381, 385 (1963) further noted that circumstances in trials always change "where justice requires its relaxation... ." The Court stated:
"The rule is that when the question is not free from doubt whether the evidence offered in rebuttal is that which belongs to the evidence in chief, or whether it is rebuttal evidence proper, the court should resolve the doubt in favor of the reception in rebuttal where (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surrebuttal as if the testimony had been offered in chief, and (3) the opposite party *544 upon request therefor is given the opportunity to reply by surrebuttal."
Id. at 186, 157 So.2d at 385.
Clark v. State, 181 Miss. 455, 180 So. 602 (1938) followed the analysis of Roney and Riley stating "[i]t is not reversible error for the court to allow testimony in rebuttal which should have been introduced as substantive evidence in chief, unless it is shown that no opportunity is afforded the defense to reply by surrebuttal testimony." 181 Miss. at 462, 180 So. at 603 (emphasis added).
In Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964), the Court stated it is not error for the trial judge to permit the state to reopen its case after it had rested for the purpose of putting on additional evidence. Again, it is at the sound discretion of the trial judge. The Court stated that "nothing whatever had intervened between the time the district attorney announced the state had rested and the time that he asked for permission to reopen and introduce further testimony. 250 Miss. at 692, 168 So.2d at 127.
Hunter v. State, 183 Miss. 779, 787, 184 So. 835, 837 (1938) stated "Moreover, even if it were true that this testimony should have been offered in chief, it was not reversible error to permit the State to introduce the same in rebuttal, where the defendant was not denied the opportunity to offer further testimony in surrebuttal." citing Roney v. State, Clark v. State. The Riley Court noted that both Lee v. State, 201 Miss. 423, 433, 29 So.2d 211, 212 (1947), and Summerville v. State, 207 Miss. 54, 63, 41 So.2d 377, 379 (1949), "the State was permitted to reopen for the purpose of proving an element of the offense itself."
In a more recent case, Meeks v. State, 604 So.2d 748, 755 (Miss. 1992), Meeks was convicted of capital murder, kidnapping, burglary, and assault. He argued that the Circuit Court erred when it refused to allow him to reopen his case after both the prosecution and defense rested its case. The defense failed to cross-examine one of the witnesses on a particular point claiming an "inadvertent oversight" and asked the court to reopen. The court denied the request but allowed Meeks to proffer for the record. The Court affirmed that a trial court has "considerable discretion" to consider reopening. The Court held no abuse of discretion existed because Meeks testified on direct examination. The court would not have erred if it allowed reopening, but here it did not add to the testimony to add serious doubt of his guilt.
In Wakefield v. Puckett, 584 So.2d 1266 (Miss. 1991), Justice Prather cited a Connecticut Supreme Court discussing this issue:
In any ordinary situation, if a trial [judge] feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence ... a miscarriage of justice [would result, the judge] may properly permit evidence to be introduced at any time before the case has been decided.
Id. at 1268 citing Wood v. City of Bridgeport, 216 Conn. 604, 583 A.2d 124, 125 (1990).
The Wakefield Court referenced another Mississippi case which held:
"As a general rule ... the reopening of a case for the purpose of showing facts vital to the issue involved, is liberally allowed ... and a failure to do so may be considered an abuse of judicial discretion." Wells-Lamont Corp. v. Watkins, 247 Miss. 379, 151 So.2d 600, 604 (1963) (emphasis added by Wells-Lamont Court)
Id. at 1268.
The Court noted the liberal application of the rule because judges are encouraged to "see that all of the necessary [evidence is introduced] so as to properly [and fairly] dispose of a case." Meeks, 604 So.2d at 755 (citing Anderson v. Anderson, 249 Miss. 1, 162 So.2d 853, 855 (1964)).
Wakefield was a prisoner who was placed in special confinement for bad behavior. His personal belongings were confiscated by prison guards and he filed suit to recover the value thereof. He mistakenly believed that because he enumerated the items in the complaint, the jury would be privy to the information. Representing himself, Wakefield failed to produce a list of personal belongings and the relevant associated costs associated to the jury. The trial court denied Wakefield *545 the opportunity to produce the list for the jury. This Court reversed, holding that Wakefield should have been permitted to introduce the list of missing items. The Court stated that the judge in determining whether to accept additional evidence should consider:
(1) whether the cause of the omission is excusable? (e.g., (omission due to inadvertence, mistake, etc.?)), (2) whether the evidence is relevant to a material issue? (3) whether the absence of the evidence will result in a miscarriage of justice? and (4) whether another party will be significantly or unduly prejudiced if the case were reopened?
Wakefield, 584 So.2d at 1268-69.

CONCLUSION
There will likely be those who might question the Court's taking such valuable time on a case such as this. Some will consider this trivial. Rest assured that the issue of "headlighting" is important to Gary P. Smith, law enforcement officers and a large segment of an interested public.
It is the Gary P. Smiths of this State who steal beautiful game animals such as deer, under cover of darkness by "headlighting", thereby blackening the image of respectable consumers of our wildlife resources. These headlighters have no respect whatsoever for the State of Mississippi's sovereign ownership of such magnificent God given creatures of the wild, entrusted to mankind for his consumption and/or enjoyment. They fail to recognize that such animals are for the benefit of all mankind, nor do they heed the State's laws regulating the taking, possession, or prohibition against certain acts regarding wildlife. To say that headlighters fail to understand the principles of good conservation management and stewardship of our abundant wildlife resources in order to secure the survival of the species for future citizens, is an understatement.
On the opposite side of the fence and the law are the average citizens, men, women and children, who enjoy the great outdoors of Mississippi, utilizing the vast game and fish resources she has to offer and who are keenly aware of their respective obligations and responsibilities to conserve and protect wildlife resources in order that future Mississippians may experience these same benefits afforded us today. Our abundant wildlife resources, so often taken for granted, are the result of the sacrifice and hard work of our elders and more so that of officials of the Department of Wildlife Conservation. The officers of the Department of Wildlife Conservation have labored long, hard years establishing the successful conservation programs and enforcing the laws necessary to produce and conserve the abundant supply of wildlife now available for all of our citizens. Both are owed a tremendous debt of gratitude by the public. We need only remind ourselves that when most of us were youngsters there were very few deer in this State, yet now there are literally thousands. We also need not forget that the funds for these conservation programs which produced such abundant wildlife have primarily been supplied by hunters, fishermen, hikers, campers, bird watchers, and other consumers or observers of nature and its wildlife resources.
This Court must continue to adhere to its long established precedent of a more liberal rule admitting testimony in rebuttal that was not strictly rebuttal in nature. The Roney Court noted this exception in 1933 and the same analysis was adhered to in Clark, where the Court held that no reversible error existed where the trial court allowed in rebuttal, evidence which should have been introduced as substantive evidence in chief, unless it was shown that no opportunity was afforded the defense to reply by surrebuttal testimony. In the case sub judice, Smith had surrebuttal opportunity but, did not avail himself to it. The trial judge did not abuse his discretion in allowing the State's rebuttal testimony to establish venue. Error, if any, was cured by the rebuttal testimony of Officer Carver which clearly established venue of the offenses charged as being in Pearl River County, Mississippi. There is no merit to Smith's claims and we must affirm the trial judge.
COUNT I: CONVICTION OF HUNTING FROM A PUBLIC ROAD AND SENTENCE OF SIX MONTHS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF *546 $500.00 AND PAY ALL COURT COSTS AFFIRMED.
COUNT II: CONVICTION OF HEADLIGHTING AND SENTENCE OF FIFTEEN DAYS IN THE PEARL RIVER COUNTY JAIL, PAY A FINE OF $1,000.00 AND FORFEIT OF ALL HUNTING PRIVILEGES AFFIRMED.
COUNT III: CONVICTION OF HUNTING FROM A MOTORIZED VEHICLE AND ORDERED TO PAY A FINE OF $100.00 AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
PITTMAN, J., concurs in result only.
DAN M. LEE, P.J., dissents with separate written opinion joined by SULLIVAN, J., and McRAE, J., joins in part.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
DAN M. LEE, Presiding Justice, dissenting:
Because I believe that the trial judge erred in refusing to grant Smith's request for a directed verdict I respectfully dissent. In this case the State, during its case-in-chief, failed to establish the venue of the crime as having occurred in Pearl River County, Mississippi, prior to Smith's motion for a directed verdict or peremptory instruction.
We echo Justice Brady's sentiment stated in Jackson v. State, 246 So.2d 553 (Miss. 1971). "It never fails to confound when we review records and discover that district attorneys still frequently fail to prove this essential jurisdictional fact, namely, the county and the state in which the violation took place." Jackson, 246 So.2d at 554. In the case at bar, the State simply failed to ask any of its witnesses during its case-in-chief this one elementary question: "In what county and state did these alleged crimes occur?"

I.
The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county and State where committed. Jones v. State, 606 So.2d 1051 (Miss. 1992). Smith attacks the sufficiency of the proof of venue and argues that the state failed to prove that the alleged crimes took place in Pearl River County, Mississippi.
The State called two witnesses during their case-in-chief, Carver and Stockstill. Neither of which testified that the crime occurred in Pearl River County, Mississippi. Stockstill, the county road manager, testified that Sones Chapel Road was a public road and that it was maintained by county funds. However, he did not testify that he was the county road manager for Pearl River County, Mississippi, or that Sones Chapel Road was located in Pearl River County, Mississippi.
Proof of venue is indispensable to a criminal trial and it may be proved by direct or circumstantial evidence. Jones v. State, 606 So.2d 1051, 1055 (Miss. 1992); Griffin v. State, 381 So.2d 155, 158 (Miss. 1980); Jackson v. State, 246 So.2d 553, 555 (Miss. 1971). In this case, none of the witnesses testified during the state's case-in-chief that the crimes took place in Pearl River County, Mississippi.
As a result of the State's failure to establish venue jurisdiction at the end of the its case-in-chief, Smith moved for a directed verdict or peremptory instruction. In considering a motion for such a directed verdict, this Court on review must consider the evidence introduced in the light most favorable to the state, accepting all evidence introduced by the state as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled. Barnwell v. State, 567 So.2d 215, 217 (Miss. 1990); Davis v. State, 530 So.2d 694, 703 (Miss. 1988); Thompson v. State, 457 So.2d 953, 955 (Miss. 1984). Conversely, if there is insufficient evidence to support a guilty verdict, the motion for directed verdict must be sustained. In the case at bar, the district attorney for Pearl River County, Mississippi, clearly did not prove venue and thus did not prove that they had jurisdiction to try Smith. Therefore, the trial judge erred when he overruled Smith's motion for a directed verdict. This situation is quite simple to remedy; *547 trial judges should grant a defendant's motion for a directed verdict when it is apparent that the state has not met its burden of establishing venue.
At trial and immediately after the State rested, the following colloquy ensued:
BY THE COURT: The State has now rested. Does the Defense have any motions they want to make at this time? BY MR. JONES: Yes, sir. If the Court please, comes now the Defendants and moves the Court to instruct the jury to find the defendants not guilty.
BY MS. CREEL: Your Honor, I can't hear.
BY MR. JONES: I'm sorry. I'll talk up. Comes now the Defendants and moves the Court to peremptorily instruct the jury to find the defendants not guilty, and then secondly comes now the defendants and moves the Court to dismiss the charges for lack of venue, hasn't been proven (sic) in what County and State this occurred.
BY THE COURT: Okay, does the State want to respond?
BY MS. CREEL: Yes, sir, your Honor. Officer Carver testified that this incident happened on Sones Chapel Road. If I'm not mistaken, he has also testified that it happened in Pearl River County. If the record does not reflect that, then Troy Stockstill testified as to Sones Chapel Road being in Pearl River County. It was made apparent on the record that Troy Stockstill is the Road Manager of Pearl River County; that he has jurisdiction in Pearl River County as to the County Roads; that he also administers to the County in his capacity as an Engineer, and he testified that Sones Chapel Road was in his jurisdiction.
BY THE COURT: I don't remember his testimony quite that way, but  and I'm not sure that we've actually proven this did occur in Pearl River or Stone or where it occurred, but I'm going to overrule the motion. I don't  I'm not sure what the testimony has been on that point, but I do recall it was the Pearl River County Road Manager who testified about Sones Chapel Road. There is a question about whether it occurred in Pearl River County or not. We'll just let the record speak for itself on that. All right, are you ready to proceed?
....
(Vol. 2, pp. 26-27) (emphasis added).
Therefore, stating that he (the trial judge) did not think the State had proved venue, but, that he would "let the record speak for itself;" the trial judge erroneously overruled Smith's motion. To further compound the situation the following colloquy took place between Smith's attorney and the trial judge after the judge overruled Smith's request for a directed verdict:
BY MR. JONES: Let me make one more short motion.
BY THE COURT: Okay.
BY MR. JONES: Comes now and moves the Court to preserve your  well, strike that. I'm going to put my people on, and I know they're going to get the venue 
BY THE COURT: You don't want to waive the venue?
BY MR. JONES: I do not want to waive the issue of venue, but I've got to put them on, and I just wanted the record to show that they've got to testify, but we do not, by virtue of them testifying, be [sic] put in a position of having to go forward and waive any claim of the [sic] venue.
BY THE COURT: The venue. All right, I'll let you put them on, then, without waiving any claim as to venue.

(Vol. 2, pp. 27-28) (emphasis added).
It is apparent from this exchange that Smith felt he needed to put on a defense and yet, he did not want to give the state a second opportunity to prove venue. From the above colloquy we can infer that the trial judge, apprised of this quandary, ruled that Smith could put on his defense and any review of Smith's directed verdict motion would be limited to the record as it existed at the close of the state's case-in-chief when Smith's motion for a directed verdict and peremptory instruction was made. As evidenced by the this exchange, the trial judge ruled Smith could take the stand and not waive his challenge to the state's deficient proof of venue as it existed at the close of the state's case-in-chief.

*548 II.

"Before a party can complain on appeal of any action of the trial court, such action must have been prejudicial to him, and, in addition, must either have been brought about by the action of the court in denying some request of his or granting some request of his adversary." Grady v. State, 144 Miss. 778, 787, 110 So. 225, 227 (1926). In the case at bar, after erroneously overruling Smith's request for a directed verdict, the trial judge ruled that Smith could put on his case without waiving his claim that the state had not proved venue. We can infer that the trial judge's erroneous ruling caused Smith to put on a case and, in effect, waive his challenge to venue. Thus, Smith was prejudiced by the trial judge's erroneous ruling.
We have recently held that once the trial court has ruled upon an issue, the parties may try the remainder of their case on the assumption that the ruling will stand, McGee v. State, 569 So.2d 1191, 1194 (Miss. 1990); Merritt v. State, 517 So.2d 517, 519 (Miss. 1987); Stringer v. State, 500 So.2d 928, 946 (Miss. 1986),
... and, when the litigant reaches this Court we will not imply a waiver from the subsequent conduct which does nothing more than show the lawyer's obligatory respect for the trial judge while at the same time continuing as best may be done the advancement of his client's cause.
Strong v. Freeman Truck Line, Inc., 456 So.2d 698, 711 (Miss. 1984), cited with approval in McGee v. State, 569 So.2d 1191, 1194 (Miss. 1990).
The State admits that the district attorney did not establish venue during its case-in-chief, but argues that its failure to establish venue was "mere oversight." This Justice does not view the State's failure to establish venue as "mere oversight." This Court has stated on many occasions that venue is indispensable to a criminal case. Jones, 606 So.2d at 1055.
Interestingly enough, the majority agrees that the State did not prove venue during Smith's case-in-chief because of Smith's reliance on the trial judge's erroneous ruling. However, instead of carrying Smith's reliance argument to its rational and logical end and holding that the State could not prove venue after the judge's erroneous ruling, the majority suggests that somehow the district attorney's failure to prove venue was corrected during the State's rebuttal case. The majority suggests that Smith's failure to challenge the State's rebuttal testimony is somewhat similar to the State making a motion to reopen the case.
The majority's holding overlooks one major flaw. In this case the State would not have had the opportunity to put on rebuttal but for Smith's reliance upon the trial judge's erroneous ruling that he could put on a case without waiving his challenge to venue. Therefore, absent Smith's reliance upon the trial judge's erroneous ruling, the State would not have had the opportunity in rebuttal to prove venue.
In Mississippi the trial court has considerable discretion to allow either side to reopen their case. Meeks v. State, 604 So.2d 748, 755 (Miss. 1992); Thomas v. State, 474 So.2d 604, 606 (Miss. 1985); Coburn v. State, 250 Miss. 684, 692, 168 So.2d 123, 127 (1964); Riley v. State, 248 Miss. 177, 186-187, 157 So.2d 381, 384-385 (1963). In the case at bar, the district attorney, when apprised of the judge's opinion that the state had not proved venue, should have made a motion to reopen its case to prove venue. The district attorney did not do so. Therefore, it defies logic to now argue that the district attorney somehow reopened the State's case through rebuttal, be it challenged or not, when it is obvious that the State never asked that the case be reopened.
Ultimately the majority suggests that Smith could rely upon the trial judge's erroneous ruling during his (Smith's) case-in-chief, but could not rely on the trial judge's erroneous ruling during the State's subsequent rebuttal portion of its case. This argument is simply wrong. Our focus in the case sub judice should center upon the deleterious effect the trial judge's erroneous ruling had on Smith's decision to put on a case. In the case sub judice, I cannot see how giving the state several bites of the apple to prove venue insures that either side is given a fair trial. Therefore, on assignment of error to *549 this Court we should review the record in Smith's case as it existed at the time the state rested its case-in-chief.
Likewise, it is apparent from the record that the trial judge did not take judicial knowledge that the alleged crime took place in Pearl River County, Mississippi. In fact, on appeal, the State does not even argue that the trial judge took judicial notice that the crime took place in Pearl River County, Mississippi. At the end of Smith's case and after the jury had been excused, the following motions were heard by the trial judge:
....
BY MS. CREEL: Do we need to go on the record about your motion?
BY MR. JONES: Well  yeah, I was going to make my  renew my other motion when you get through.
BY THE COURT: Okay, I'll let you make your statement for the record, then.
BY MS. CREEL: Your Honor, we would like to address the previous motion by Defense Counsel to dismissal for lack of venue. We would like for the Judge at this time to take judicial notice of the fact that U.S. 26 and Sones Chapel Road are in Pearl River County, and in Jackson v. State, 556, Southern 2nd, 335, Mississippi, 1990, the Supreme Court held that the  that this Court can take judicial notice that a certain County or City is in a certain County for purposes of establishing venue under the Rules of Evidence, 201(b), and we would ask that you do that at this time.
BY THE COURT: Okay, Highway 26 is not a State Highway  I mean, a Federal Highway. I think it's just a State Highway.
BY MS. CREEL: What did I say, U.S.?
BY THE COURT: Yeah, you said U.S.
BY MS. CREEL: Highway 26, I stand corrected.
BY THE COURT: There is a Highway 26 a Sones Chapel Road that intersects in Pearl River County. I'll take judicial notice of that. There maybe other Highway 26's and Sones Chapel Road's in other States or Counties that I'm not aware of, but I am aware of one in  that's located and intersects here in Pearl River County, and now  and any  going any directions from that in a mile or two miles or whatever, would still keep you in Pearl River County, and in the State of Mississippi. So from that standpoint, I will take judicial notice of that. I have overruled his motion, but I will let that go into the record, then, at this time.
BY MS. CREEL: Okay, would you take judicial notice of the fact that this incident happened in Pearl River County?
BY THE COURT: No, I'm going to overrule his motion on that basis. I'm going to take judicial notice that the place where Amacker (sic) Cemetery, where it allegedly occurred in that area  I will take judicial notice that that area is in Pearl River County, Mississippi.
BY MS. CREEL: Okay, thank you.
From the above motions, it is apparent that the trial judge did not take judicial notice that the crime occurred in Pearl River County, Mississippi. The judge did take judicial notice that Amaker Cemetery is in Pearl River County, Mississippi. But, it is clear that the trial judge did not take judicial notice of venue. This situation is clearly distinguishable from Jackson v. State, 556 So.2d 335 (Miss. 1990).
In Jackson, the defendant asked for a directed verdict after the state rested its case-in-chief. The defendant argued that the state had not proved venue. The trial judge denied defendant's request and upon motion by the state took judicial notice that the crime took place in Warren County, Mississippi. In the case sub judice, the trial judge refused to take judicial notice of the fact that the crime took place in Pearl River County, Mississippi. Therefore, Jackson, 556 So.2d 335, is not dispositive of the case at bar.
Because the trial judge ruled that Smith, by putting on a case, would not waive his challenge to the State's failure to prove venue; a fortiori, Smith was entitled to assume that the trial judge's ruling would stand. McGee v. State, 569 So.2d 1191, 1194 (Miss. 1990); Merritt v. State, 517 So.2d 517, 519 (Miss. 1987); Stringer v. State, 500 So.2d 928, 946 (Miss. 1986). Therefore, this Court should not punish Smith for relying on the *550 trial judge's ruling, erroneous or not, by holding that the State reopened its case through rebuttal when under the unique facts of this case it is plain that the State did not move to reopen its case.
Accordingly, I respectfully dissent.
SULLIVAN, J., joins this opinion. McRAE, J., joins in part.
McRAE, Justice, dissenting:
I write to specially concur with Justice Lee's dissent that the State failed to prove venue, namely, the county and state that the alleged crime occurred.
The defendant asked for a directed verdict after the State rested. As we have espoused so many times, a judge must base his ruling on the evidence presented. If the State fails to prove all elements of a crime which includes venue, then the case must be dismissed. In this case, the judge made an erroneous ruling since the record failed to show any proof of venue. He said, "I'll let the record speak for itself. I don't recall if they did or didn't." And the record so speaks. Clearly venue had not been established by the State. We have stated that if the defendant did not move for a directed verdict in a criminal case then he waived his motion to dismiss. The defendant did precisely what this State's stare decisis instructed him to do, but now we allow the State to correct its fatal error by proving venue later. The State relied on its position that all elements had been proven. The State should now be held accountable for its actions. The majority essentially allows a waiver without couching it in that term.
I, too, recognize that "spotlighting" cases are very emotional cases; however, one's emotions should not be involved in our decisions, particularly when the issue is very simple. Was venue proven in this case when the State rested? The answer is simply no. Therefore, this case should have been dismissed. It appears that the majority's writer provided his personal views about "spotlighting" since none of the first two paragraphs of the majority appear in the record. I hope this is only an aberration and that this Court will return to the stare decisis in the future.
I, therefore, dissent and join that portion of Justice Lee's dissent concerning the lower court judge's erroneous ruling at the time the directed verdict was requested by the defendant. Accordingly, I dissent.
DAN M. LEE, P.J., and SULLIVAN, J., join this dissent.