**6/3/97**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00756 COA

LUGENE GREER APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JANNIE LEWIS

COURT FROM WHICH APPEALED: YAZOO COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: EDWARD BLACKMON

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: PAT FLYNN

DISTRICT ATTORNEY: NOEL CROOK

NATURE OF THE CASE: CRIMINAL (FELONY) - MURDER

TRIAL COURT DISPOSITION: LIFE SENTENCE

MOTION FOR REHEARING FILED:7/8/97

MANDATE ISSUED: 10/16/97

BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

THOMAS, P.J., FOR THE COURT:

Lugene Greer appeals his conviction of murder, raising the following issues as error:

**I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO PERMIT DEFENSE WITNESS EARL WHITNEY TO PRESENT TO THE JURY CERTAIN THREATS MADE BY THE DECEASED AGAINST THE LIFE OF THE**

**APPELLANT WHICH WERE COMMUNICATED TO THE APPELLANT.**

**II. WHETHER THE COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO GRANT A DIRECTED VERDICT.**

**III. WHETHER THE TRIAL COURT COMMITTED ERROR IN DENYING DEFENSE JURY INSTRUCTION NUMBER D-2.**

Finding no error, we affirm.

## FACTS

On the evening of October 15, 1993, Lugene Greer was at Mr. T's Lounge with Laverne Buchanan. Buchanan was the ex-lover of Melvin McCollough. Greer and McCollough got into an argument about Buchanan. Greer and Buchanan left together that night, with Greer staying at Buchanan's house until the morning.

The next morning, McCollough drove to the home of Greer and talked with Greer's common-law wife, Diane Sanders. McCollough told Sanders that Greer had been with Buchanan the previous night. McCollough also told Sanders that he was going to kill Greer. McCollough left, and Greer drove up at his home about thirty minutes later. Sanders told Greer the nature of McCollough's visit and his accusations, including McCollough's statement that he was going to kill Greer.

Greer left his home and drove to McCollough's place of employment. The two got into an argument about McCollough speaking with Sanders. Greer then pulled out a gun and shot McCollough three times. McCollough tried to escape by crawling under a truck, but his effort failed. McCollough pled for his life, but his pleas were to no avail. McCollough died as a result of the gunshot wounds. One eyewitness said McCollough had nothing in his hands at the time of the shooting. Another eyewitness said McCollough was carrying an unopened rifle case containing a rifle he had bought from his boss a few minutes before the shooting.

## ANALYSIS

### I.

**WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO PERMIT DEFENSE WITNESS EARL WHITNEY TO PRESENT TO THE JURY CERTAIN THREATS MADE BY THE DECEASED AGAINST THE LIFE OF THE APPELLANT WHICH WERE COMMUNICATED TO THE APPELLANT.**

Two to three weeks prior to the shooting, McCollough allegedly told Earl Whitney, a defense witness, that McCollough was going to kill Greer. Whitney purported to testify to this at trial, and also to the fact that he had told Greer about McCollough's threat. The State objected on the grounds that the testimony was hearsay. Greer asserts that he was prohibited from going into the conversation between McCollough and Whitney, and that this is error. Greer asserts that the exclusion of these

threats severely prejudiced his ability to show his state of mind at the time of the confrontation with McCollough. However, Whitney did not tell Greer about McCollough's threat until after Greer shot and killed McCollough. This is clearly evident in the record:

Testimony of Earl Whitney

Q: Did you talk to your son-in-law (Greer) about what had been told to you?

A: No, I didn't.

Q: You didn't tell him what Melvin (McCollough) had said?

A: No. *Not until after Melvin's death.*

Q: Oh, that's when you told him?

A: Uh-huh.

The statements to Whitney could hardly affect the state of mind of Greer because Greer was not aware of the specific threats made upon his life until after Greer shot and killed McCollough. Therefore, this point is moot and Greer's first assignment of error is without merit.

## II.

## WHETHER THE COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO GRANT A DIRECTED VERDICT.

Greer asserts that the evidence was insufficient for conviction because the state failed to show that he was not acting in necessary self-defense. The State contends that the evidence was sufficient to support the decision to deny a directed verdict for Greer.

When considering a motion for a directed verdict, we must consider the evidence introduced at trial in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. *Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994). The motion for directed verdict must be denied if there is sufficient evidence to support a guilty verdict. *Smith*, 646 So. 2d at 542 (*citing Barnwell v. State*, 567 So. 2d 215, 217 (Miss. 1990); *Davis v. State*, 530 So. 2d 694, 703 (Miss. 1988); *Thompson v. State*, 457 So. 2d 953, 955 (Miss. 1984)). Alternately, if the evidence does not support a directed verdict, the motion for directed verdict must be sustained. *Smith*, 646 So. 2d at 542. A new trial will not be ordered unless we are convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow the verdict to stand, would be to sanction an unconscionable injustice. *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995) (citations omitted).

During the State's case-in-chief, eyewitness Billy Nevilles testified that Greer drove up, got out of his car, went over to where Melvin McCollough was standing, asked McCollough about the visit with Sanders, pulled out a gun and shot McCollough. Nevilles testified that Greer shot McCollough three times while McCollough was begging for his life. Nevilles stated McCollough had nothing in his

hands during this time. Eyewitness John Stewart testified that Greer drove up, got out of his car, walked over to McCollough, asked McCollough why he talked with Sanders, and then Greer pulled a pistol out of his pocked and shot McCollough three times. Stewart testified that McCollough begged Greer not to kill him, but Greer did not adhere to this request. Stewart stated that McCollough had a rifle case in his hands, but that the case was zipped. The zipped rifle case was found laying behind McCollough's dead body on the ground.

Taking the evidence in the light most favorable to the verdict, and finding that the verdict is not contrary to the overwhelming weight of the evidence, we conclude there was ample evidence for conviction and the trial court was correct in denying the motion for a directed verdict.

### III.

### WHETHER THE TRIAL COURT COMMITTED ERROR IN DENYING DEFENSE JURY INSTRUCTION NUMBER D-2.

At the close of evidence, Greer proposed the following instruction:

You are instructed that if believed from the evidence that the conduct of the decedent, Melvin McCollough, on the date and time charged in the indictment evidenced a present intention to kill, or to do some great personal injury to the defendant Lugene Greer, and there was imminent apparent danger of such intention on the part of the decedent, Melvin McCollough being accomplished, and that it was the fear of decedent's then present intent to kill or inflict great personal injury that caused the Defendant to shoot Melvin McCollough with a gun, resulting in his death, it is your sworn duty to return a verdict of not guilty for the Defendant, Lugene Greer.

The trial judge refused to submit this instruction, citing that it was cumulative to S-3, which was granted without objection:

The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or do him some great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the Jury to determine the reasonableness of the ground upon which the Defendant acts.

Defendant's instruction D-3 dealing with self-defense was also granted. It reads:

The Court instructs the jury that the defendant, Lugene Greer had a right to defend himself by the use of a gun and to kill Melvin McCollough with said gun if at the time of his altercation with Melvin McCollough it reasonably appeared to him as a reasonable man that Melvin McCollough was about to commit an assault on the person of Lugene Greer, with the design to do him some great personal injury being inflicted on the person of the defendant, Lugene Greer (sic).

If you find that the killing of Melvin McCollough was justifiable, it is not necessary that you believe that the defendant, Lugene Greer had no ill will or malice toward Melvin McCollough.

Greer argues he was entitled to instruction D-2 because evidence showed that threats against his life were made by McCollough in close proximity to the time of the fatal shooting. Greer further asserts that this instruction would have allowed the jury to consider the events leading up to the shooting and Greer's state of mind leading up to the shooting. However, Greer cites no authority in support of his argument, and this precludes appellate review of the alleged error. *Hoops v. State*, 681 So. 2d 521, 526 (Miss. 1996); *Peterson v. State*, 671 So. 2d 647, 659 (Miss. 1996); *Kelly v. State*, 553 So. 2d 517, 521 (Miss. 1989).

Without waiving the procedural bar, we find this assignment does not warrant reversal. We have reviewed the instruction requested by Greer and refused by the trial court and find it to be repetitious of other instructions offered to the jury. The Supreme Court has held that "[a] trial court is not required to instruct a jury over and over on a principal of law even though some variations are used in different instructions." *Laney v. State*, 486 So. 2d. 1242, 1246 (Miss. 1986). "Furthermore, all instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error." *Id.*

**THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**